## Case No. 4,834.

FITCH v. CORNELL et al.

[1 Sawy. 156.][1]

Circuit Court, D. Oregon. May 10, 1870.

---

[1] [Reversed in 23 Wall. (90 U. S.) 374.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

Joseph N. Dolph and Walter W. Thayer, for plaintiff.

Erasmus D. Shattuck, for defendants.

DEADY, District Judge. This action was commenced April 16, 1869, to recover the possession of lots 3, 4, 5 and 6, in block 111, in the city of Portland, against George W. Durand, then in the actual possession of the premises. The complaint alleges that the plaintiff is a citizen of the state of California, and said Durand is a citizen and resident of Oregon; that plaintiff is the owner in fee-simple of the property sued for, and entitled to the immediate possession thereof; and that the defendant Durand is wrongfully in possession of the same and withholds such possession, to the damage of plaintiff $1,000.

Among the papers in the case is one purporting to be the answer of Durand, and signed by his attorneys, and verified by him on April 27, 1869. The paper is attached to the separate applications of William Cornell and others to be made defendants in place of Durand, the outer one of which is marked "Filed May 3, 1869." I presume it was assumed by the attorney, that this answer being attached to these applications, it became a part of them, and was filed with them. But this is a mistake. It has no connection with them, and ought not to have been attached to them. It comes from another source, and should have been filed before the applications were entitled to be heard. A landlord has no right to apply to be substituted as defendant in place of the party who is in actual possession and sued, until the latter by his answer made and filed in court, declares "that he is in possession only as the tenant of another, naming him, and his place of residence." Code Or. 226. Such slovenly and irregular practices touching matters of this kind are often in after times the cause of innocent parties being involved in unnecessary and expensive litigation, and therefore ought not to be tolerated by the courts. For this reason I call attention to it in this instance. Having done so, I will assume for the purposes of this case, that it was in fact filed, although not so endorsed, by being lodged in the clerk's office, and placed by the clerk among the papers of the case, and that therefore Cornell and others had a legal right to be made defendants in place of Durand, the party in possession.

The answer of Durand admits that he is in possession of the premises, but alleges that he holds such possession as the tenant of William Cornell, S. M. Tunstall and Mary Jane, his wife, Jonathan Moore and Jacob Cline, residents of Multnomah county, in the district aforesaid.

On May 5, 1869, William Cornell, in pursuance of the order of the court making himself and the others aforesaid defendants, in place of Durand, filed an answer to the complaint, which contains the following pleas or defenses:

1. A specific denial of each material allegation of the complaint, except the citizenship of the parties and the possession of the defendants.

2. That the defendant is the owner in fee of an undivided one fourth of the premises. for which he defends. This plea, instead of stopping here, proceeds at length to state the evidence which the defendant claims proves the fact that he is the owner of such undivided interest in the premises. This part of the plea will be omitted here and stated in the evidence.

3. That the plaintiff ought not to have and maintain this action, because in an action heretofore brought by one Jacob Cline to recover the possession of the same premises against John Hulery, in the circuit court for the county of Multnomah, and state of Oregon, in which one Mary Cline, guardian for her minor children Antha, Isabella, Mary Jane and Jacob Cline, was admitted by the order of said court as a defendant in place of said Hulery, as guardian aforesaid, it was on December 5, 1863, by the judgment of said court determined that said Mary Cline, as guardian aforesaid, was entitled to the possession of said premises, and that Jacob Cline take nothing by his said action; and that afterwards the said Jacob Cline appealed from the judgment of the said circuit court to the supreme court of the state aforesaid, and said supreme court, on hearing and consideration of said appeal gave judgment

on September ——, 1864, affirming the judgment of the said circuit court, which still remains in full force and effect; and that said judgments of said circuit and supreme courts are conclusive as to the estate in said premises, and to the right to the possession thereof upon said Cline and all persons claiming under him since the commencement of said action, and that the only right or title held by the plaintiff herein, is derived from Cline since said action was commenced.

4. That the defendant and those under whom he claims since November 26, 1862, have made permanent improvements upon the premises, of the value of $1,000, which sum he offers to set-off against any sum that the plaintiff herein may be found entitled to as damages on account of the defendant's occupation of the premises.

The other three defendants filed separate and similar answers, Mary Cline appearing and answering for her ward, Jacob Cline aforesaid. On May 6, the plaintiff filed separate replications to the answers of the defendants. These do not contain, as they should, separate replies to the separate defenses in said answers, of title in the defendants, and a former adjudication of the right to the possession of the premises. As to the plea of title, they deny that the defendants are each the owners of an undivided fourth of the premises, or of any estate or interest therein, and then proceed to reply to the evidence of defendants' alleged title, as set forth in the plea of title in the answer —either denying the facts stated, or the legal conclusions sought to be drawn therefrom. The proper reply to this part of these pleas would have been a motion to strike out for redundancy. As to the pleas of former adjudication, the replications admit that an action was brought in the circuit court aforesaid, by Jacob Cline against John Hulery, to recover possession of the premises in the complaint mentioned, as stated in said pleas, but deny that it was adjudged therein that said Cline take nothing by said action, or that the same was brought for the identical causes as this, or that "all the matters involved in this action were adjudged or finally determined" therein; "and alleges that a true copy of the judgment in said action is hereto attached and marked 'A';" and denies that said judgment of the circuit and supreme court aforesaid, are conclusive as to the estate in said property, or as to the right to the possession thereof upon said Jacob Cline, or those claiming under him as alleged in said pleas.

As to the so-called "Exhibit A," attached to the replications, it cannot be regarded as a part of them. There is no such thing as an exhibit in pleadings, in an action at law. A record or instrument must be stated in a pleading according to its legal effect, or according to the tenor thereof, and its legal operations referred to the court. Gould, Pl. 156–160. The plaintiff by his replication, denies that the action mentioned in this record or so-called "Exhibit A," was brought for the same causes of action as this, and also denies the legal effect claimed for such record by the defendants in their answers. This is sufficient, so far as the pleadings are concerned. The burden of proof is upon the defendants, to show the existence of such a record, and that they have correctly stated its legal effect.

From the evidence it appears:

I. That in 1836, in the state of Illinois, Jacob Cline and Mary Cline were intermarried, and that they continued to live together as husband and wife, until 1862, and that since 1844, they have resided in Multnomah county, Oregon.

II. That on September 26, 1862, Mary Cline commenced a suit against Jacob Cline, her husband, for a divorce from the bonds of matrimony, on account of adultery and harsh and cruel treatment, and for the custody and guardianship of four minor children of said marriage, and for a division of Jacob's property, and an allotment of so much thereof to said Mary, as might be just and equitable under the circumstances; and that Mary was the owner in her own right of one half of the donation claim of 640 acres of said Jacob and Mary, of the value of $2,500; and that said Jacob was the owner of the other half of said donation claim, together with other real property situate in the city of Portland, of the value of $18,000, and of personal property of the value of $5,000, all of which has been acquired since the marriage aforesaid, except $1,500 which Jacob possessed at that time; and that there were then living seven children, the issue of said marriage, four of whom were minors, between the ages of nineteen and seven years.

III. That on November 26, 1862, said circuit court by its decree then given, in said suit for divorce, etc., adjudged and provided, that the parties thereto be divorced from the bonds of matrimony; and that said Mary "have the custody and guardianship of the four minor children of the parties mentioned in the complaint, to wit: Antha, Isabella, Mary Jane and Jacob, and the care and control of their estate during their minority respectively;" and that the defendant's half of the donation claim aforesaid, and lots five and six in block seven, in the city of Portland, then owned by Jacob, be given to and "vested in said Mary, to have and to hold to her own use during her natural life," which real property, according to the statements of said parties in their respective pleadings, was then of about the value of $5,200; and also that certain furniture owned by said Jacob, of the value, according to the statements aforesaid, of about $500, "be given to, and transferred to said Mary, to have and to hold the same to her own use;" and that said Jacob pay to said Mary the sum of $1,500 in money out of the

remainder of said property in two payments within the period of six months thereafter; and also "all the right, title and interest of said Jacob in and to lots three, four, five and six, in block 111 in the city of Portland, be and the same is divested out of the said Jacob, and the same is hereby vested in the four minor children of the parties, to wit: Antha, Isabella, Mary Jane and Jacob, as tenants in common, to have and to hold the same, with the appurtenances to them and their heirs forever, and the same Jacob is hereby ordered and required to deliver over to the said minors or their guardian, the possession of said property, and said guardian is hereby required to use and apply the issues, rents, and profits of said estate, to the maintenance and education of said minors respectively, according to their interest during their minority, which last mentioned property is the same for the possession of which this action is brought, and which at the date of said decree, according to the statements of the parties aforesaid, was of the value of about $3,600; and further, that the remaining property and pecuniary rights of Jacob not disposed of by said decree, remain to him as if the same had not been made."

IV. That Jacob paid said sum of $1,500 to said Mary, and also the costs of said suit; and that on November 25, 1863, Jacob gave notice of an appeal from the decree aforesaid to the supreme court of the state of Oregon, and that on September 21, 1864, said supreme court, on motion of respondent, dismissed said appeal, without hearing the cause upon its merits, because so far as appears, no transcript thereof was filed by appellant in said court.

V. That on October 8, 1863, said Jacob Cline brought an action in the circuit court aforesaid against John Hulery, to recover possession of the lot in controversy, alleging in his complaint therein, that he was the owner in fee and entitled to the possession of the premises, and that the said Hulery was wrongfully in the possession thereof. On the same day Hulery was duly served with process requiring him to appear and answer the complaint by November 9, which he failed to do. On November 14, Cline moved for a judgment against Hulery; and on the same day Mary Cline moved for leave to appear and answer as the landlord of Hulery. Accompanying this latter motion, was the affidavit of Mary to the effect that the property in question belonged to her children, and as their guardian, she was entitled to the possession of the same; and that she had rented it to Hulery, and had no notice of the pendency of the action until the day before, whereupon said circuit court denied the motion of Jacob and allowed the motion of Mary. On November 16, Mary filed an answer to the complaint of Jacob, wherein she denies that he is the owner of the premises and entitled to the possession thereof, and pleads, according to the tenor thereof, so much of the decree in the suit of divorce above mentioned, as relates to the premises in controversy, and that as guardian of the minor children aforesaid, she had rented said property to Hulery, who was then in the possession of the same as her tenant; and that she was applying the rents and profits of said property to the support of said children, in pursuance of said decree.

VI. That the action aforesaid was tried by the said circuit court, without the intervention of a jury, and on December 4, the said court found, as a conclusion of fact, that "Mary Cline is the guardian of the minor children named in the answer, and as such, was at the time of the commencement of this suit, and is by her tenant, the defendant Hulery, in possession of the premises described in the complaint;" and "that the decree, an extract of which is set out in the answer, remains unreversed, and at the date of the answer not appealed;" and that said court also found "as a conclusion of law from these facts, that the defendant Mary Cline, as guardian. etc., and the defendant John Hulery as her tenant, are entitled to the possession of said premises." And afterwards, on December 5, the court aforesaid gave judgment in said action and upon said findings, as follows:

"This cause being submitted to the court upon the pleadings and an agreed statement of facts, the court finds that the defendant Mary Cline, as guardian, and the defendant Hulery as her tenant, are entitled to the possession of the premises described in the complaint, and it is ordered and adjudged by the court that the defendant Mary Cline, as guardian, and defendant John Hulery as her tenant, do have and hold the possession of said premises, and that they recover of and from the plaintiff their costs and disbursements, to be taxed." And that afterwards Jacob Cline took an appeal from said judgment of said circuit court to the supreme court of the state of Oregon, upon the hearing and consideration of which, it was determined by said supreme court, on September 27, 1864, that there was no error in the record of the proceedings in the court below, and that its judgment "be in all things affirmed."

VII. That in the month of August, 1862, Jacob Cline became and was the owner in fee simple of the premises, and that soon after the decree of divorce aforesaid, Mary Cline, with the knowledge of Jacob, received the rent from the tenant in possession of the same, and after said tenant left the premises she rented them to Hulery aforesaid, and that the use and occupation of the same since November, 1862, has been worth not less than $45 per month, or $520 per annum; and that on December 9, 1868, Jacob Cline and Sarah Ellen, his wife, executed a conveyance of

the premises to the plaintiff herein; and that Isabella aforesaid intermarried with one James Campbell in the month of December, 1867, and that afterwards and before December, 1868, she and her said husband duly executed a conveyance of an undivided one fourth in the premises to the defendant Moore; and that Antha aforesaid intermarried with one Peter Cline prior to December, 1868, and afterwards and prior to the last mentioned date, she and her said husband duly executed a conveyance of an undivided one fourth interest in the premises to the defendant, Cornell; and that Mary Jane aforesaid, after the decree of divorce aforesaid, and before the commencement of this action, intermarried with one S. M. Tunstall, one of the defendants herein; and that said Antha, Isabella and Mary Jane had each arrived at the age of majority before the commencement of the action, and that Jacob Cline, Junior, is now aged fifteen years and six months.

Upon this statement of the case, two principal questions arise, and were argued by counsel.

1. Had the circuit court of Multnomah county jurisdiction and power in the suit for divorce between Mary and Jacob Cline, to take the property of the latter and vest it in his children, or any of them? and,

2. Is the plaintiff barred from maintaining this action to recover the possession of the premises by reason of the judgment of said circuit court, in the action of Jacob Cline against Hulery aforesaid.

The answer to the first question depends upon the construction to be given to the statute then in force, entitled—"An act relating to marriage and divorce," passed Jan. 17, 1854, and which took effect on the first of May following. The second and last chapter of the act is entitled—"Divorce and Alimony." After declaring the causes for which a divorce might be granted, and in what court the proceedings should be had, and the mode of them, the act provides as follows:

"Sec. 7. The court in granting a divorce, shall make such disposition of, and provision for the children, as shall appear most expedient under all the circumstances, and most for the present comfort and future well being of such children. * * *

"Sec. 8. In granting a divorce, the court shall also make such a disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and the burdens imposed upon it, for the benefit of children. * * *

"Sec. 10. When the marriage shall be dissolved by the husband being sentenced to imprisonment, and when a divorce shall be ordered for the cause of adultery committed by the husband, the wife shall be entitled to her dower in his lands in the same maner as if he were dead; but she shall not be entitled to dower in any other case of divorce." St. Or. 1855, p. 540.

This act remained in force until June 1, 1863, when it was superseded by title 7, of chapter 5, of the Civil Code, passed October 11, 1862. Code Or. 269. If the act has received a settled construction in the courts of Oregon, it is the duty of this court to follow such construction. But I do not think it can be said to have received such a construction. It contained no provision for an appeal from the inferior courts in which the original jurisdiction was vested, to the supreme court, and therefore its provisions never came before the latter court, and were never directly considered or expounded by it. During the existence of the act, the decisions of the district courts, until the state organization went into operation in 1859, and thereafter the circuit courts, were final in each case. The defendants have produced five decrees of these courts in support of the position that the act authorized the court to give the real property of the parties, or either of them, to the children.

In Horner v. Horner, on September 5, 1855, there was a decree of divorce on the complaint of the wife. The parties were in possession of a donation claim of 640 acres, under the act of congress, each being entitled to one half thereof in his or her own right. The court (Olney, Judge) gave the wife her half of the land, and gave the husband's half to two minor children of the parties. In Shively v. Shively, on June 15, 1857, there was a divorce granted on the complaint of the wife. The parties were in possession of a donation claim, and the court (Olney, Judge) gave the husband his half of the land, and gave the wife's half to the minor children of the marriage. In Fozette v. Fozette, on August 15, 1859, there was a divorce granted on the complaint of the wife, and the parties appear to have been in possession of a donation claim of 640 acres. The court (Wait, Judge) divided the wife's half of the claim between herself and two minor children, but made no disposition of the husband's half. In Soverns v. Soverns, on November 29, 1860, there was a divorce granted on complaint of the wife. The court (Wait, Judge) divided the land of the husband (160 acres) between the wife and one minor child of the marriage. In Stone v. Stone, on August 6, 1859, a divorce was granted on the complaint of the wife. The parties were in possession of a donation claim of 640 acres. The court (Wait, Judge) gave the husband his half of the claim, and divided the wife's half between herself and one infant child of the marriage.

No other instances of the exercise of this power have been shown, and these are confined to one judicial district of the state, the same in which Cline v. Cline [3 Or. 355] was decided. In the other judicial districts, no such construction appears ever to have been

given to the act, and only in these comparatively few instances in a period of nine years, in that one. If this state of things is any evidence of a settled construction of the statute by the courts of Oregon, it is against the one claimed by the defendant. I conclude, then, that the question is unsettled, and that this court must construe the act for itself.

The primary object of the statute was to authorize and provide for the dissolution of the marriage relation in certain cases when, on account of the neglect, misconduct or unfitness of one of the parties to it, the other, in the judgment of the legislative assembly, ought no longer to be bound by it. But when a divorce is granted, the parties are not restored to their original condition, and it becomes necessary to provide for and adjust the rights of the parties in and to the property of each other, and to make disposition of and provide for the future custody and maintenance of the minor children of the marriage. This power is merely incidental to that of granting the divorce, and therefore ought not to be extended or applied farther than is necessary and convenient to provide for the altered circumstances of the parties directly consequent upon their judicial separation. Unless a divorce is granted, the court has no power over the property or children of the parties. The power to dispose of the property of the parties is not an unqualified one. Certainly it would not be contended that the legislature intended to give the court power in its discretion to dispose of the property by giving it to the parents of the parties, or to their cousins or strangers, or to charitable uses; nor, it seems to me, could the rights of creditors be prejudiced or excluded by such disposition. In making this disposition, the court is required by the act to have "regard to the respective merits of the parties;" that is, the parties whose property is to be disposed of, are the parties whose "respective merits" are to be regarded by the court in making such disposition. Now, the necessary inference from this clause is, that in disposing of the property the court is confined to the parties whose "merits" it is required to consider in making it. These parties are the parties to the suit—the husband and wife—and not other persons, whether strangers or relations, lineal or collateral. Again, the court in disposing of the property of the parties, is to have regard "to the condition in which they"—the parties to the suit—"will be left by such divorce;" and also "to the party"—one of the parties to the suit—"through whom the property was acquired," and "to the burdens imposed upon it"—the property divided between the parties—"for the benefit of children."

From these considerations I conclude, that section 8, which authorizes the court granting a divorce "to make such disposition of the property of the parties, as shall appear just and equitable," cannot and ought not to be construed as giving power to such court to dispose of such property by giving it to third persons—even if they were the children of such parties. The only disposition of the property which this section authorizes the court to make, is one between the parties to the suit. Whether its power in this respect is absolute or not, is a serious question, but for the purposes of this action it may be admitted to be unlimited.

But it is claimed that, under the clause already quoted from section 7 of the act, the circuit court had power to give the premises in controversy to the minor children of Cline. This clause provides that, "the court in granting a divorce, shall make such disposition and provision for the children as shall appear expedient under the circumstances, and most for the present comfort and future well-being of such children." This power to dispose of and make provision for children, is given to the court by the statute only as an incident to the power to grant a divorce. Therefore, as has been said of the power to dispose of the property of the parties, it ought not to be extended or applied farther than is necessary and convenient for the altered circumstances of the parties directly consequent upon their judicial separation.

During the marriage, the custody of the children belongs to the parents jointly, subject to the ultimate authority of the father as the head of the family, but upon a divorce being granted, it is or may be impossible that this joint custody can be continued. To meet this emergency, the court is authorized to dispose of the children. But it would not be authorized to dispose of them by giving them to a third person, whom it regarded as better qualified than either of the parents. The act was not made to enable the circuit court to interfere with the relation of parent and child only as an incident of the power of granting a divorce, and then only as far as might become necessary on that account. The joint custody of the parents being determined or rendered impracticable by the divorce, the only power of the court in the premises is to provide for the emergency by giving the children to one or the other of them.

This word "children" must be construed to mean minor children. If the children of the parents are of age when the divorce is granted, the court has no power to dispose of them or provide for them. The reason is, they are no longer in the custody or under the control of their parents, nor are the latter bound to maintain them, except under peculiar circumstances arising from poverty and sickness. So with the power to make "provisions for the children" of divorced parties, it must be exercised in subordination to the proposition that the court is only authorized to make provision for their maintenance, so far as the condition and circumstances of their parents warrant and require, and their

divorce renders it necessary. Of course under no circumstances, would it be authorized to make provision out of the property of the parties or either of them, for the maintenance of children who are of age, and whom the parents are therefore not bound to support.

Whether, under the authority to make provision for the minor children of Jacob Cline, the court had authority to take the premises in controversy, and give them to such children outright, during their minority, or to their mother in trust for them, may be a question. The act, in some particulars, seems rather to contemplate that the provision shall be made in the usual way, by giving the parent to whom the children are confided, a larger portion of property, to enable him or her to meet the burden of their maintenance, or by imposing upon the property of the other a charge sufficient for that purpose. But the act, so far as it gives the court jurisdiction, does so unqualifiedly. There is no limit or restraint as to the choice of means by which the court shall make this provision, and I am inclined to the opinion that the court, if it appeared "expedient under all the circumstances," had authority to vest the property in the children or their mother, for their use, for that purpose. But as Jacob Cline was not bound to support his children after they became of age, the court had no authority to make any provision out of his property for their maintenance, to extend beyond the time when they would become obliged to support themselves. The circuit court, although authorized to divorce Mary from Jacob, and as between themselves to make a just and equitable disposition or division of their property, and to dispose of and provide for the maintenance of their minor children, had no power to anticipate Jacob's demise, and to make a will for him devising this property to these children— "to have and to hold the same with the appurtenances to them and their heirs forever."

Upon this point it seems to me there is no room for difference of opinion. The decision of the circuit court given in the suit for divorce, so far as it provides that the premises in controversy should be held by, or for the use of the minor children of Jacob, beyond the time when they should become of age respectively, is simply void. Upon any construction that I am able to give the act, the legislative assembly did not intend that a father's property should be arbitrarily taken from him and given to his adult child, or what amounts to the same thing, to his minor child to hold and possess after he becomes of age, because forsooth, in a civil suit for divorce, he was adjudged to have broken his marriage vows, or neglected the duties which they imposed upon him. The two things have no necessary connection; and if the act expressly provided for its being done, it would be so far void. Such a disposition of property amounts to a forfeiture without due process of law, and is beyond the power of the legislative assembly to authorize.

The consequence of vesting the arbitrary discretion in any court to take a parent's land and give it to his or her child, because in the judgment of the court it is expedient or best for the child, is singularly illustrated in the above cited case of Stone v. Stone. There the divorce was granted upon the complaint of the wife for the fault of the husband: The parties owned 320 acres of land apiece, each in their own right. The court, in legal effect, divested each of any right to or interest in the land of the other. As the mother was the innocent party, and the only issue of the marriage was an infant female child, the court very properly gave it to the custody of the mother, but instead of giving the mother a portion of the father's land, to assist her in bringing up the child, or charging it with the payment of some sum of money for that purpose, the court arbitrarily took one half of the mother's land, and gave it to the child forever.

I next proceed to consider the second question as to whether the plaintiff is barred from maintaining this action on account of the previous adjudication in the case of Cline v. Hulery [Case No. 2,897]. The plaintiff Fitch claims under Jacob Cline, and of course is bound by that adjudication as far as Cline, his grantor, is. They are privies in estate. But the judgment in Cline v. Hulery cannot operate as an estoppel against Cline or his grantee in this action, unless it also binds the defendants. Estoppels, to be binding upon either party, must be mutual. Deery v. Cray, 5 Wall. [72 U. S.] 803. In this case there is no such mutuality. The defendants now before the court were neither parties nor privies to the judgment in the action of Cline v. Hulery. The minor children of Jacob and Mary Cline were not served with process in that action, and the court never acquired jurisdiction of them. Consent will not give jurisdiction as to minors. but the proceeding must be in invitum. No guardian can voluntarily appear for a minor, but he must be served with process and thereby brought into court. and a guardian ad litem then and there appointed for him. Code Or. 146. 151. It seems that Mary Cline assumed that she was the landlord of Hulery, the person in possession, when in fact, upon her own showing. the minor children were such landlords, and she was in some sort their guardian or trustee. It is not even clear there was any person properly before the court in that action as defendant, except Hulery. True, Mary Cline was admitted to defend the action as the landlord of Hulery, in opposition to the motion of plaintiff for judgment against H. for want of an answer. But it is not perceived on what ground the court made this order. as the law authorizing the landlord to be made defendant in the place of the tenant, in an action of ejectment, does

so only upon the condition or contingency that the tenant against whom the action is brought shall first answer and plead, "that he is in possession only as the tenant of another, naming him and his place of residence." "Thereupon, the landlord, if he apply therefor, shall be made defendant in place of the tenant, and the action shall proceed in all respects as if originally commenced against him." But Hulery made no answer, of any kind, and the court allowed Mary Cline to volunteer to become a defendant, upon her statement, instead of Hulery's answer, that she was his landlord.

But, for the purposes of this action, it may be admitted that the court had the power to admit Mary Cline to become a defendant, as it did, or that the plaintiff in the action accepted her as such defendant, by proceeding thereafter with the action against her, and still the judgment therein would not have been given between the parties to this action, or those under whom they claim, and therefore the plaintiff Fitch is not estopped by it. The minor children of Cline or their grantees, defendants in this action, do not claim under Mary but under Jacob Cline, and therefore they are not estopped by a judgment in an action between Mary and Jacob; and if they are not estopped, then neither is Jacob or his subsequent grantee.

Again, it may be assumed for the time being that in Cline v. Hulery [supra] the minor children aforesaid became parties to the action by reason of their mother's being admitted as their guardian to become defendant as landlord, and in place of Hulery, and therefore that the judgment given therein is mutually binding upon said children and Cline, and estops either of them or those claiming under them, from asserting or claiming anything to the contrary, and still the plaintiff is not estopped by such judgment from maintaining that he is the owner of the premises in controversy and entitled to the possession thereof.

The action of Cline v. Hulery was brought under section 13 of the Civil Code, which provides, that: "Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action at law." And also, that the action must be brought against the person in actual possession, or if no one be in such possession, then against the person acting as owner thereof. Code Or. 226.

At common law ejectment was only a possessory action, and a judgment therein did not determine the estate or interest of the parties in the property, and owing to the special fictions which were a part of the action, such judgment, in effect, did not conclusively determine even the right to the possession. But in most of the United States it has long since been provided, that a judgment in an action of ejectment, as between the parties, shall be conclusive as to all the

questions actually and necessarily included therein or necessary to such determination. Still the defendant was permitted to plead the general denial or "Not guilty," and the jury to find a general verdict for the plaintiff or defendant. Under such a practice the record would not disclose what estate or interest, if any, the defendant claimed in the premises, and if judgment was given for him, it would not appear whether the jury passed upon his claim or not. The question may have arisen upon the evidence and been passed upon by the jury in favor of the defendant, or the controversy may have been confined to the title of the plaintiff, and the jury may have based their verdict upon the insufficiency of the evidence to support it. Now, if the judgment on the verdict was afterwards pleaded as an estoppel, it would become necessary to ascertain by parol evidence what was proven to the jury and what was or may have been passed upon by them in making up their verdict.

The action given by the Code is simply the common law action of ejectment pruned of its fictions; but the Code goes farther and, by way of remedying the evil above suggested, it provides that "the defendant shall not be allowed to give in evidence any estate in himself or another in the property, or any license or right to the possession thereof; unless the same be pleaded in his answer," with "the certainty and particularity required in a complaint." The complaint must set forth the nature of the plaintiff's "estate in the property, whether it be in fee, for life or for a term of years, and for whose life or the duration of such term."

The jury by their verdict, if it be for the defendant, must find "the estate in the property or part thereof or license or right in the possession * * * established on the trial by the defendant, if any; in effect as the same is required to be pleaded." Code Or. 226, 227.

It also provides that a judgment in ejectment "shall be conclusive as to the estate in the property and the right to the possession thereof, so far as the same is hereby determined upon the party against whom the same is given" and all persons claiming under him, except in certain cases when judgment is given for want of an answer.

As to what is to be considered as having been determined by the judgment of the circuit court in Cline v. Hulery, the Code prescribes the rule as follows: "Sec. 727. That only is deemed to have been determined by a former judgment, decree or order, which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereunto." Code Or. 329.

Now it is manifest that nothing appears to have been determined by this judgment, except that Mary Cline as guardian, was then entitled to the possession of the premises. The court sitting as a jury in its

verdict or conclusions of fact, only found that Mary Cline was the guardian of the minor children aforesaid, and as such guardian was in possession of the premises, and that the decree in the divorce suit was unreversed.

On the appeal to the supreme court, the judgment of the circuit court was simply affirmed. For aught that appears in these judgments, both the circuit and supreme court may have been of the opinion that the decree in the divorce suit, so far as it provided that this property should be vested in the minor children after they become of age, was simply void. The most that can be said to have been determined by the judgment, is that the minor children were entitled to the use of the property according to their respective interests until they became of age respectively, and that in the meantime Mary, as their guardian or trustee, was entitled to the possession thereof and to take and receive the rent and profits for the purpose of their nurture and education.

By the act of October 11, 1864, which took effect January 20, 1865 (Code Or. 644), the age of majority for males in this state was fixed at 21 years, and that of females at 18 years. Before the commencement of this action all these minor children, except Jacob, Jr., had become of age. As to these adults, Jacob, Sen., was no longer bound to support them, and the power of the circuit court did not enable it to subject his land thereafter to their support, by the intervention of a trustee, guardian or otherwise. As to Jacob, Jr., his term in an undivided fourth of the premises does not expire until he becomes of age or is deceased.

The plaintiff is the owner in fee and in possession of three undivided fourths of the premises, and in reversion of the other undivided fourth, and has a present right to the possession of the whole in common with the tenant for years of the last mentioned undivided fourth.

The plaintiff is also entitled to recover from the defendants Cornell, Moore and of S. M. Tunstall, each, one fourth of the value of the use and occupation of the premises during the time they have been in possession respectively, and in the case of Tunstall, since his wife Mary Jane became eighteen years of age.

The answers of the defendants also contain a plea of set off for the value of permanent improvements made upon the property by the defendants, or those under whom they claim. But the plea is altogether insufficient, as it does not state that such improvements were made while the parties were holding under color of title, adversely to the claim of the plaintiff, in good faith, but only that they are permanent and valuable. The plaintiff has not replied to the plea, but treated it as an immaterial allegation. On the trial, however, the defendants, without objection from the plaintiff, examined witnesses upon the subject, but I do not think the proof sufficient to warrant the conclusion that the improvements, if any, are either permanent or valuable.

The defendants appear to have paid the ordinary taxes levied upon the property during their occupation, and also some assessments for the improvement of adjoining streets. Although not set up in the pleadings, the parties have stipulated that the amount of these taxes may be deducted from the sum found due the plaintiff for mesne profits.