## WOOLLEY v. TAYLOR et al.

No. 2586.   Decided December 1, 1914 (144 Pac. 1094).

1. DEEDS—DELIVERY—EVIDENCE.  Evidence *held* to show the delivery of a deed by a father to his daughter, though the instrument was not recorded until after the father's death, and up to that time he exercised acts of ownership over the property.[1] (Page 230.)

2. GIFTS—"GIFT INTER VIVOS."  If the donor makes unconditional delivery and parts with all present and future control and dominion over the property, there is a consummated and valid "gift *inter vivos*," though present enjoyment be postponed. (Page 231.)

3. GIFTS—GIFTS INTER VIVOS—DELIVERY.  To constitute a valid gift *inter vivos*, delivery need not be made to the donee personally, but may be made to a third person as agent or trustee for the use of the donee.[2] (Page 231.)

---

[1] *Wilson* v. *Wilson*, 32 Utah 169; 89 Pac. 643.
[2] *Boyle Adm'r* v. *Dinsdale*, 45 Utah —; 143 Pac. 136.

4. GIFTS—GIFTS INTER VIVOS—EVIDENCE—SUFFICIENCY. Evidence, in an action for corporate stock, *held* to show that deceased made a valid gift *inter vivos* of the stock to his daughter, delivering it to a banker to hold for her. (Page 231.)

5. EXECUTORS AND ADMINISTRATORS—ACTIONS BY ADMINISTRATORS—EVIDENCE—DAMAGES. In an action by an administrator to recover the value of furniture belonging to his intestate which the intestate's daughter gave to defendant, evidence *held* not to show that an award of seventy-five dollars was insufficient. (Page 233.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by Edwin T. Woolley, administrator of the estate of Moses Davis, deceased, against Joseph E. Taylor, who died pending the action, which was revived against Alma O. Taylor, and another, his executors.

Judgment for defendants. Plaintiff appeals.

AFFIRMED.

*Rawlins, Ray & Rawlins* for appellants.

*Young, Snow & Ashton* for respondents.


STRAUP, J.

This action involves the ownership of real estate in Salt Lake City, of shares of the capital stock of the Utah or Utah-Idaho Sugar Company, and a few shares of the capital stock of an orchard company at Provo. Moses Davis, a widower residing in Salt Lake City, had but one son, David J. Davis, and but one daughter, Rachel S. Davis, both of whom were over the age of twenty-one years. He purchased the real estate on the 13th of August, 1900. A warranty deed of conveyance was then made in his name and delivered to him. He took possession of the property, and, with his daughter, occupied it. On the 1st of September, 1900, he, by warranty deed, conveyed it to his daughter.

They continued to occupy the property until his death on the 14th of March, 1909. The deed from him to his daughter was not recorded until the 15th of March, 1909, the next day after his death. In 1907 he was the owner of shares of the capital stock of the Utah or Utah-Idaho Sugar Company and shares of stock of other industrial corporations. He then indorsed in blank 345 preferred and 345 common shares of stock of the sugar company and a few shares of the orchard company, placed them in an envelope, indorsed thereon a description of its contents, describing the kind and number of shares of stock and stating that they were "the property of Rachel S. Davis," his daughter, signed the indorsement, delivered the envelope containing the stock to his banker at Salt Lake City with directions to deliver it to his daughter after his death. He similarly placed 582 shares of sugar stock and shares of stock of other corporations in another envelope with similar indorsements, delivered it also to the banker, with directions to be delivered after his death to David J. Davis, his son. Such deliveries were made by the banker after the death of Moses Davis. After his death, and on the 31st day of March, 1909, Rachel S. Davis, unmarried, by warranty deed, conveyed the real estate to Joseph E. Taylor. The deed was not recorded until the 2d of May, 1910. She also, on the 25th of May, 1910, indorsed and delivered to Taylor the shares of stock theretofore delivered to her by the banker. She also transferred to Taylor the household furniture on the premises occupied by her and her father. Now the administrator of Moses Davis, claiming that his intestate at the time of his death was the owner of the real estate, the shares of stock delivered to Rachel S. Davis, and of the furniture, seeks by this action to recover them from Taylor. Taylor died pending the action. His executors were substituted as defendants. The court denied plaintiff's demands as to the real estate and stock, but granted them as to the furniture, and gave plaintiff judgment for seventy-five dollars, its value. The plaintiff appeals.

Taylor was not a purchaser for value. The properties were conveyed and transferred to him by Rachel S. Davis

as mere gifts. The case turns on questions of delivery of the deed and of the stock by Moses Davis to Rachel S. Davis. If sufficient and complete deliveries were made by him, then she, as against the plaintiff who does not rely on fraud, or that the deliveries were made to cheat or affect then existing creditors, acquired title; otherwise, not. The court found good and sufficient deliveries were made. These findings are assailed. As to the deed from Moses Davis to Rachel, there is this: When he purchased the property he stated that he was buying it for his daughter, and after he had purchased it that he "would leave it to her." After his purchase he talked with the conveyancer and expressed an intention to give the property to his daughter, but to retain a life estate, and expressed a wish to make a deed and "put it away" until he was dead, when his daughter could get it. The conveyancer informed him such a deed would not be good, and that:

"Unless you deliver the deed, she can't get any title; you must deliver the deed to her now; then she can do as she wants with it—put it away or destroy it, or anything else."

The father and daughter were both present. The conveyancer thereupon drew a warranty deed conveying the property to the daughter by the father. The father signed and acknowledged it, and then in the presence of the conveyancer handed it to his daughter. After that, improvements were made on the property and were paid for by him. He and his daughter lived on the property for more than eight years and until he died, she keeping house for him and caring for him. During all that time the property was insured and assessed in his name, and all insurance and taxes paid by him. There is testimony that the daughter in 1908 said that her father "ought to leave me the property," and after his death, "I am glad father left me the home." Upon these facts, and the fact that the deed was withheld from record, the plaintiff urges non-delivery of the deed by her father to her, and that it was not, nor intended to be, a grant *in præsenti*. The testimony of the conveyancer, showing an actual and manual handing of the deed by the father to his daughter without reservations or restrictions of any kind,

is not disputed. There is no evidence to show that the father thereafter had the deed in his possession, or that he, at the time of its delivery, or thereafter, reserved or exercised any control or dominion whatever over it. The deed on its face is an absolute conveyance of the fee and warranty of title from him to her. There is no evidence to show that it in fact was not what it on its face purports to be. True, it was not recorded until after the father's death. That is a circumstance bearing on the question of delivery and intent; but it does not, in and of itself, show non-delivery, or disprove the direct evidence of delivery. That the father, after the deed was made, paid the taxes and insurance and paid for the improvements is evidence, considered by itself, of more or less weight, of ownership or of some right in him. But as to that the relation of the parties must be considered, he a widower with some means, she his daughter without means, and his only dependent, living with him, keeping house for him, and caring for him. Under such circumstances, the father living on the premises and making such payments is not inconsistent with ownership of the property in her. That was but natural for a father to do for his daughter, and is unlike a case of a claimed grant in præsenti to a stranger where the grantor remained in possession, improved the property, and paid the taxes. We, therefore, think the daughter had title and hence conveyed title to Taylor. *Wilson* v. *Wilson*, 32 Utah 169; 89 Pac. 643.

Now, as to the shares of stock. Because the father directed the banker not to deliver the stock to his daughter until after the father's death; because he, after he had delivered it to the banker and until the father's death, collected and used the dividends paid on the stock; because when changes were made in the sugar company and new certificates issued for old, he took the stock from the envelopes, exchanged it, and replaced it with the new—the claim is made of non-delivery of the stock and want of a sufficient transfer beyond the control and dominion of the father, and that hence he, at his death, was still the owner of it. That a consummated and valid gift *inter vivos* with a postponement of present enjoyment may be made cannot be

doubted, if the donor makes unconditional delivery and parts with all present and future control and dominion over the property. *Bostwick* v. *Mahaffy*, 48 Mich. 342; 12 N. W. 192; *McNally* v. *McAndrew*, 98 Wis. 62; 73 N. W. 315; *Talbot* v. *Talbot*, 32 R. I. 72; 78 Atl. 535; Ann. Cas. 1912C, 1221; *Calkins* v. *Equitable Bldg. & L. Ass'n, etc.*, 126 Cal. 531; 59 Pac. 30; *Smith* v. *Youngblood*, 68 Ark. 255; 58 S. W. 42. Such delivery need not be made to the donee personally. It may be made to a third person as agent or trustee for the use of the donee. *Boyle, Adm'r*, v. *Dinsdale*, 45 Utah 112; 143 Pac. 136; 20 Cyc. 1198. It was so made here. That the trustee, the banker, was not to make delivery to the donee until the death of the donor, did not destroy the validity of the gift. *Bostwick* v. *Mahaffy, supra;* 14 A. & E. Ency. L. (2d Ed.) 1026.

Now does the evidence show that the father, the donor, when he delivered the stock to the banker, made an unconditional delivery and parted with all present and future control and dominion over the property? It is claimed he did not: (1) Because he, after the delivery to the banker, made an exchange of the stock. But that exchange was made necessary on account of a change in the company. What the donor did in such particular was but to protect and safeguard the property, and was not inconsistent with an absolute delivery and parting of title. (2) That he, after delivery, collected and used the dividends on the stock. That is sufficiently answered against appellant's contention in the cases of *Boyle, Adm'r*, v. *Dinsdale, supra; Calkins* v. *Equitable Bldg. & L. Ass'n, etc., supra;* and *McNally* v. *McAndrew, supra.* (3) Because of the testimony of the banker, who, in response to the question asked him on cross examination, "he [the father] retained the right at all times to come to you and withdraw those escrows?" answered "I assumed that; that he had that right. Q. But you did permit him to do it on a former occasion? A. On one occasion, possibly twice." He further testified that the daughter on that occasion may have come to the bank with the father, but that she did not come to the desk where the witness was. On redirect he was asked and answered:

"Upon what do you base your statement you presumed Mr. Davis [the father] had the right of recalling or withdrawing those? A. Because I let him do it. Q. You let him do it on one or two occasions when he made exchange and brought back other stock? A. Yes; he said he wanted to make some change in the stock, is my recollection. * * * Q. Was anything said by Mr. Davis at any time when he left those envelopes that he reserved the right to withdraw them? A. Not to my recollection. Q. You merely concluded that he had the right, being the donor, and let him exercise the right? A. Correct."

It is thus apparent that the statement of the witness that the father "retained the right to withdraw the escrows" was based, not on anything said or done by the donor when the stocks were left with and accepted by the witness, but on his mere assumption that the donor thereafter made the exchange, not of certificates of stock in one company for those of another, but stocks representing one and the same interest, made necessary on account of a change or merger of companies. We, therefore, think the gift good, and that title passed from the father to the daughter and hence from her to Taylor.

The court found that the furniture which the daughter, after the father's death, assigned and transferred to Taylor, and which was later sold by him, was the property of the father at the time of his death, and gave the plaintiff judgment for seventy-five dollars, its value. The plaintiff contends that the value was greater, and hence that he was entitled to a greater judgment, the amount prayed for, $350. Both parties concede that the evidence as to quantity, quality, and value of the furniture was very uncertain and indefinite. The appellant says "it was impractical to arrive at its actual value at the date of its conversion," when sold by Taylor, and states that, "under the evidence, it was shown that the value of the furniture was considerably in excess of the amount prayed for." But he does not point or refer us to anything, except a check given by the father for $133.40 to a furniture company in 1899, ten years before his death, but which does not disclose, nor

is it otherwise shown, what it was given for, two checks to another furniture company, one in 1905 for $56.50 for a range and linoleum, and one in 1905 for $78.15 for a carpet, and still another in 1905 for $38 for a china closet. Such evidence, with no proof what the one check was given for, or what the condition of the range, carpet, or china closet, purchased five years before the father's death, was at the time of his death, or when received and sold by Taylor, or what furniture in fact was received or sold by him, certainly is not sufficient to overthrow the court's finding.

We, therefore, think the judgment should be affirmed, with costs. Such is the order.

McCARTY, C. J., and FRICK, J., concur.