S. J. FISHER, Appellant, v. FRANK PAUP et al., Appellees.

**DEEDS:** **Filling Blanks and Effectiveness of Covenants.** The legal
1 holder of a deed executed by a remote grantor and blank as to grantee has implied authority to insert his own name as grantee, and thereupon the conveyance and the covenants thereof speak, as to said grantee, as of the date of the execution by the grantor.

**COVENANTS:** **Instant Breach—Pleading.** Plaintiff in an action for
2 breach of grantor's covenant of seizin need not allege that he has been ousted or evicted, when the grantor had no seizin or title *when he executed his deed.*

**ADVERSE POSSESSION:** **Evidence—Sufficiency.** Evidence (in an action
3 tion on the covenants of a foreign deed) reviewed, and held to establish title, under the Nebraska rule that "naked claim of right, coupled with continuous, open, and notorious possession for a period of 10 years, establishes title by adverse possession."

*Appeal from Shelby District Court.*—J. B. ROCKAFELLOW, Judge.

DECEMBER 16, 1920.

REHEARING DENIED APRIL 6, 1921.

ACTION for damages consequent on alleged breach of covenant of deed resulted in the dismissal of the petition. The plaintiff appeals.—*Reversed.*

*Edward S. White,* for appellant.

*Cullison & Cullison,* for appellees.

LADD, J.—The defendant Frank Paup, his wife joining, executed a warranty deed, purporting to convey Block 6 in West Park Addition to Grand Island, Nebraska. The consideration recited therein was $500; the date was June 16, 1915; and the space for name of grantee was left blank. This conveyance, with $1,600, was the consideration for the transfer to Paup of a house in Harlan, belonging to Asa White. J. G. Lewis conducted the negotiations for White, and finally bought the house for $1,600 and had it conveyed to Paup for like consideration, making the deed in blank. Nothing was said concerning the name to be inserted, though it was agreed that the place for grantee's name should be left blank. Later, Lewis exchanged the block in Nebraska for the share of the plaintiff, Sanford J. Fisher, in his father's estate, the former paying a difference of $1,100, and delivering the blank deed to Fisher. This was in May, 1916. In the course of two or three weeks, Fisher went to examine the land described in the deed, and found T. J. Dennon in possession, claiming ownership. On June 24, 1918, Fisher, by letter, authorized his attorney to insert the former's name in the deed as grantee, which was done, and thereafter this action brought. The petition alleged breach of the covenants in the deed, for that Paup did not hold the premises by good and perfect title, nor by any title whatever, and was without lawful authority to sell and convey the same, and that the property described in the deed was that owned by and in possession of another; and it was also asserted that defendants were estopped from questioning the validity of the deed. The answer was a general denial.

Authority to insert the name of grantee in the deed was clearly to be implied, according to numerous decisions of this court, as well as of the Supreme Court of Nebraska; and when

1. DEEDS: filling blanks and effectiveness of covenants.

this was done, the conveyance, including covenants, related back to the date of its execution by the grantor. *Halvorson v. Mullin,* 179 Iowa 293.

The only remaining question is whether Dennon had acquired title by adverse possession. If he had so done at the

time of the conveyance, the covenants therein were breached upon
delivery. In such a case, it is not necessary to
allege an ouster or eviction; it is sufficient to
negative the words of the covenant and to
allege that the grantor had no seizin or title to the land. *Brandt
v. Foster,* 5 Iowa 287, 294; *Mitchell v. Kepler,* 75 Iowa 207;
*Foshay v. Shafer,* 116 Iowa 302. If, then, Dennon had acquired
title to the land by adverse possession, there was a breach of
warranty *eo instante* upon the execution of the deed.

2. COVENANTS: instant breach: pleading.

The evidence disclosed that Dennon had been in possession
of and enjoying the use of the block of land described continu-
ously for 18 years. During that time, it has been inclosed by
fences separately or with other land owned by
Dennon. He began occupancy by picketing his
cows on the block, and then caused the rubbish,
such as brick, iron, and the like, to be removed, and the land
broken. He testified:

3. ADVERSE POSSESSION: evidence: sufficiency.

"I make claim to ownership of Block 6. I first made claim
to ownership some 5 or 6 years ago. I don't know as I have said
anything to anybody before that. I just took care of it as my
very own for more than 12 years then. Nobody ever asked me
anything about it. During this 18-year period, men came and
said they bought it. I always did tell them it was my own, and
that I would keep it that way."

It appears that there is a highway along the west side of
West Park Addition, containing this block; that Dennon had
title by deed to 94 of the lots in the addition, leased 38 lots of one
Welpton, and, in his language:

"All the rest I have squatted on. There are 160 lots in the
addition, and the rest, besides the 94 and 39, I am holding. My
house is on Block 8. I am holding the streets and alleys. Part
of them I farm, and part is in pasture. There are no streets
and alleys left open. I have used Block 6 and streets and alleys
about 18 years. * * * There has been man after man come there
and say that he owned Block 6, but I always told them it was
mine. That began 5 or 6 years ago. * * * I never had Block 6
fenced by itself. I took off probably half a dozen loads of brick-
bats, stone, and stuff from Block 6. Block 6 was in the thickest
part of it. This place was used for a good many years for a

dumping ground. They quit using it about 20 years ago. I got after the police, and they gave me signs to put up, to 'keep off.' I went to farming it. I didn't know the owner of Block 6; didn't make any inquiry. I didn't ask anybody's permission to go on there. I didn't inquire as to the matter of streets or boundaries of Block 6."

Other evidence tended to corroborate the above, and to prove the market value of the land in controversy. Also, Section 7564 of the Revised Statutes of Nebraska, 1913, was introduced in evidence, by which "an action for the recovery of the title or possession of lands, tenements or hereditaments, or for the foreclosure of mortgages thereon, can only be brought within ten years after the cause of action shall have accrued."

Numerous decisions of the court of last resort of that state also were introduced, from which it appears that the doctrine of *Grube v. Wells,* 34 Iowa 148, does not obtain there, but that a naked claim of right, coupled with continuous, open, and notorious possession for a period of 10 years, establishes title by adverse possession. Thus it was said, in *Murray v. Romine,* 60 Neb. 94 (82 N. W. 318), with reference to whether a defense of adverse possession had been made out:

"We do not deem it necessary to review the evidence, but it is sufficient to say that it discloses that Gillespie, for some years prior to the time he transferred possession to the defendant, was in the actual, open, notorious, and exclusive possession of the land; that in one way or another he occupied it, either by herding cattle thereon, or by cutting grass upon it and fencing a portion of the tract, and did so adversely occupy it to the exclusion of all others. This was certainly evidence of adverse possession sufficient, if believed by the jury, to establish a claim of ownership in Gillespie, although it would not have been inconsistent with his holding the land under a claim of a different nature than that of ownership."

To the same effect, see *City of Florence v. White,* 50 Neb. 516 (70 N. W. 50); *Lantry v. Wolff,* 49 Neb. 374 (68 N. W. 494); *Baty v. Elrod,* 66 Neb. 735 (92 N. W. 1032); *Brownfield v. Bleekman,* 4 Neb. (Unof.) 443 (94 N. W. 715). Though the claim of right, as appears from these decisions, may be shown by circumstances, such as the manner of the possession and acts

and conduct of the alleged claimant with reference thereto, the claim of right must have existed throughout the period of possession, to render it adverse. The basic element of every adverse title is possession under claim of right. As remarked in *Colvin v. Republican V. L. Assn.*, 23 Neb. 75 (8 Am. St. 114):

"The statute of limitations will not run in favor of an occupant of real estate, unless the occupancy and possession are adverse to the true owner, and with the intent and purpose of the occupant to assert his ownership of the property. His possession must be as owner and adverse to every other person."

In *Ryan v. City of Lincoln*, 85 Neb. 539 (123 N. W. 1021), the decisions of that state are reviewed, and, after reciting the facts, this conclusion is reached:

"Those acts, in the words of Judge Gantt, 'are presumptive evidence and evincive of intention to assert ownership over and possession of the property.' *Horbach v. Miller*, 4 Neb. 31. If, however, that presumption is met by the sworn admission of the occupant that, in exercising dominion over the land, he did not claim to own it, the presumption will disappear. It is not essential that the occupant accompany his possession with declarations of hostility toward the owner of the fee. *City of Florence v. White*, 50 Neb. 516. His exclusive occupation under a claim of right is sufficient, ordinarily, to establish an adverse possession. To constitute adverse possession there must be a combination of conduct and intent. If the actor testifies to his intention and purpose in performing his visible acts of authority over the property, and admits that he did not act under a claim of right or ownership, his testimony may, and as against himself ought to, overcome the conclusions and presumptions that otherwise would have been drawn from his conduct. It is presumed that a man will do that which tends to his obvious advantage, if he possesses the means to accomplish his purpose. Of all persons, the plaintiff knew best whether his possession of the tract in question was under a claim of right or ownership, and if he has failed to unequivocally state the fact, while a witness in his own behalf upon this subject, but, on the contrary, has admitted that he held possession, trusting that he would not be disturbed for 10 years, and thereafter intended to assert title

to the land, the court will not be justified in drawing inferences to support a judgment in his favor."

The evidence, as we think, leaves no doubt that Dennon had been in actual, open, peaceable, notorious, and exclusive possession of Block 6 for more than 15 years. Was such possession under claim of right? From this evidence, such a finding might have been made; and, when considered in connection with Dennon's assertion of his claim of right, there can be no other conclusion than that his possession was under such claim. True, he says that he "made claim to ownership some 5 or 6 years ago," but adds, showing that he had reference to verbal assertions only, that:

"I don't know as I have said anything to anybody before that; I just took care of it as my very own for more than 12 years then. Nobody ever asked me anything about it."

This interpretation is confirmed by his testimony later on, that:

"There has been man after man come there and claim that he owned Block 6, but I always told them it was mine. That began 5 or 6 years ago."

As seen, such claim may be proven, under the ruling of the courts in Nebraska, by circumstantial evidence; and, from his acts in clearing the land of rubbish and plowing it immediately thereafter, inclosing it continually by fence, and cultivating, pasturing, and maintaining the fences for 15 years, and treating it as his own for 12 of these years, and from such verbal claims as he made, the only inference to be drawn is that his occupancy was under claim of right, and the possession adverse. He was never disturbed in his possession, paid taxes during the 3 years previous to the trial, and, according to his undisputed testimony, had been in possession of and cared for the property, for at least 12 years, as his own. We are of opinion that, under the rules prevailing in Nebraska, Dennon held title by adverse possession, and that the trial court erred in dismissing the petition.

The judgment is—*Reversed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.