## RATTERMAN v. LODGE.

(Circuit Court of Appeals, Eighth Circuit. May 18, 1926.)

No. 7135.

**1. Gifts ⬿49(6).**

Evidence *held* to show gift inter vivos of notes and mortgages purchased by donor, who had assignments made to her sister.

**2. Gifts ⬿4.**

To constitute gift inter vivos, there must be clear intention to make a present gift, fully executed by actual, constructive, or symbolic delivery.

**3. Gifts ⬿31(1).**

That interest on notes, the subject of a gift inter vivos, was reserved by donor, *held* not to invalidate gift.

**4. Gifts ⬿31(3).**

That trust company was permitted to retain possession of notes and mortgages purchased from it, the subject of gift inter vivos by purchaser, *held* not to invalidate gift; there being no reservation of dominion by donor.

Appeal from the District Court of the United States for the Southern District of Iowa; Colin Neblett, Judge.

Action by L. F. Ratterman, as administrator of the estate of Wilhelmina W. Thompson, against C. M. Lodge. Decree for defendant, and plaintiff appeals. Affirmed.

Carson L. Taylor, of Des Moines, Iowa (John N. Hughes and W. J. O'Brien, both of Des Moines, Iowa, on the brief), for appellant.

Chauncey A. Weaver, of Des Moines, Iowa, for appellee.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. L. F. Ratterman, as administrator of the estate of Wilhelmina W. Thompson, deceased, filed a bill in equity against Mrs. C. M. Lodge, wherein he prayed for a decree adjudging certain promissory notes and mortgages in the possession of Mrs. Lodge to be the property of such estate, and for an order impounding such notes and mortgages pending a determination of the suit. The answer in effect set up that the notes and mortgages were the property of Mrs. Lodge by virtue of a gift inter vivos from Miss Thompson to Mrs. Lodge. The cause was referred to a master.

The evidence adduced before the master showed substantially the following facts:

Mrs. Lodge and Miss Thompson were sisters. The former resided at Des Moines, Iowa, and the latter during her lifetime at Cincinnati, Ohio. They were the last surviv-

ors of a family of twelve children, consisting of nine sisters and three brothers. Miss Thompson visited with Mrs. Lodge at Des Moines from August 26 until the latter part of October, 1922. About September 1, 1922, Mrs. Lodge and Miss Thompson went to the office of the treasurer of the Iowa Loan & Trust Company, and Miss Thompson discussed with George W. Gray, treasurer of the trust company, the purchase of certain notes and mortgages from the trust company. On or about September 7, 1922, the two sisters again went to the office of the trust company. They talked the matter over between themselves, and finally went to the counter and said to Mr. Gray that they believed they would take the notes and mortgages. Mrs. Lodge said to Miss Thompson: "Do just as you please about it." Gray then inquired in whose name the assignments should be made out, and Miss Thompson said: "Well, make them out in the name of Mrs. Lodge." Mrs. Lodge then said: "Well, I will not take any of the interest." Gray then instructed the clerk to make the assignments out in the name of Mrs. Lodge, and to make a notation that the interest was to be remitted to Miss Thompson. Miss Thompson paid for the securities by two certificates of deposit. The notes were indorsed by the trust company in blank. The assignments were made out in the following form: "For value received, the Iowa Loan & Trust Company * * * does hereby sell, assign, and convey to Mrs. C. M. Lodge, heirs, successors, and assigns, a certain mortgage [here followed a particular description of the mortgage], as well all its rights and title in and to the premises in said mortgage above described; the notes, to secure which said mortgage was given, having been transferred to said assignee by indorsement. * * *" They were duly executed by the trust company. The notes, mortgages, and assignments were retained in the possession of the trust company. The trust company collected the interest and remitted it to Miss Thompson during her lifetime. Shortly after the death of Miss Thompson, Mrs. Lodge called at the office of the trust company and asked for the notes, mortgages, and assignments, and Mr. Gray delivered them to Mrs. Lodge. Gray testified without objection: "That was my understanding as to what Miss Thompson wanted done" at her death. "They were to be turned over to her sister. I got that impression from my talk with Mrs. Lodge and Miss Thompson. That was the understanding that I had, and proceeded on that understanding."

In the month of February, 1923, Miss Thompson stated to Mrs. Alice J. Schooler, Mrs. Wilma Blakeley, and Mrs. D. R. Stewart: "I want my sister Kate (Mrs. Lodge) to have all that I have got, because there are only just the two of us." Mrs. Schooler testified that Miss Thompson made substantially that statement on several occasions in the spring of 1923.

The master made findings of fact and conclusions of law sustaining the gift. Exceptions were filed to the report of the master. The trial court overruled these exceptions, and affirmed the findings of fact and conclusions of law made by the master. A decree was entered for the defendant, and plaintiff appealed.

[1] The assignments of error may be treated under one proposition, namely, that the evidence was insufficient to support the findings of the master, confirmed by the court, that there was a gift inter vivos.

[2] To constitute such a gift there must have been a clear and unmistakable intention on the part of Miss Thompson, the donor, to make a present gift of the notes and mortgages to Mrs. Lodge, the donee, and such gift must have been fully executed by the actual, constructive, or symbolical delivery of such notes and mortgages to Mrs. Lodge. Allen-West Commission Co. v. Grumbles (C. C. A. 8) 129 F. 287, 290, 63 C. C. A. 401; Beaumont v. Beaumont (C. C. A. 3) 152 F. 55, 58, 81 C. C. A. 251; note 25 A. L. R. 642; 12 R. C. L. pp. 930–936, §§ 9–12; Id. p. 941, § 18; 28 C. J. pp. 626–638, §§ 15–26.

At the time of the transaction in question, the title to the notes and mortgages was in the trust company. At the instruction of Miss Thompson, the assignments were made out to Mrs. Lodge. The notes and mortgages and the instruments of assignment were all retained by the trust company. In order to complete the transfer of title from the trust company, a delivery was necessary. 8 C. J. p. 346, § 524; 3 R. C. L. p. 967, § 175. There can be no doubt that such a delivery took place. It was clearly the intention of all the interested parties that title should pass from the trust company. We believe the fact that the assignments ran to Mrs. Lodge and the surrounding circumstances compel the conclusion that the delivery was to the trust company as the agent of Mrs. Lodge, and that the legal title to the notes and mortgages passed by virtue of that transaction to Mrs. Lodge. The equitable title also passed to Mrs. Lodge, unless it was the intent of the parties that she was to hold the notes and mortgages as trustee for Miss Thompson. There is nothing on the face of the instru-

ments to indicate a trusteeship. They ran to Mrs. Lodge, her heirs, successors, and assigns. If there was an intent to transfer such notes and mortgages to Mrs. Lodge, as trustee, such intent must be gathered from the surrounding facts and circumstances. When Miss Thompson gave instructions to the treasurer of the trust company to make out the assignments to Mrs. Lodge, Mrs. Lodge said: "Well, I will not take any of the interest." If it was the intent of the parties that the transfer was to be to Mrs. Lodge as trustee for Miss Thompson, there would have been no occasion for that remark, because the owner of the equitable title would clearly have been entitled to such interest. It is apparent that the treasurer of the trust company was unable to testify in detail to the statements made by Miss Thompson, but he was permitted to testify without objection that he understood, from what was said, that the interest was to go to Miss Thompson during her lifetime, and upon her death the notes and mortgages were to be delivered to Mrs. Lodge. That such was the intent of Miss Thompson was indicated by her statements, thereafter made, that on her death she wanted her property to go to Mrs. Lodge. We find nothing in the evidence showing any reason for a trusteeship, or any statement or act of the parties indicating an intent to create a trusteeship.

[3] The fact that the interest collected by the trust company on the notes was to be paid to Miss Thompson during her lifetime did not prevent the transaction from constituting a valid gift inter vivos. Where there has been an absolute and completed gift of personal property, the reservation by the donor to himself during his lifetime of the earnings of such property, such as interest on notes or dividends on stock, will not defeat the gift. Tucker v. Tucker, 138 Iowa, 344, 116 N. W. 119, 121; Greene v. Tulane, 52 N. J. Eq. 169, 28 A. 9, 11; McNally v. McAndrew, 98 Wis. 62, 73 N. W. 315; Calkins v. Equitable B. & L. Ass'n, 126 Cal. 531, 59 P. 30; Jones v. Nicholas, 151 Iowa, 362, 130 N. W. 125, 128; Pyle v. East, 173 Iowa, 165, 155 N. W. 283, 285, 3 A. L. R. 885; Grant Trust & Savings Co. v. Tucker, 49 Ind. App. 345, 96 N. E. 487, 489; Shepard v. Shepard, 164 Mich. 183, 129 N. W. 201, 208; Seavey v. Seavey, 30 Ill. App. 625; Robertson v. Robertson, 147 Ala. 311, 40 So. 104, 3 L. R. A. (N. S.) 774, 10 Ann. Cas. 1051; Beaumont v. Beaumont, supra; note 3 A. L. R. 902, at page 906. It will be noted that the reservation of interest in the instant case was not a condition imposed by Miss Thompson, the donor, but was at the request of Mrs. Lodge, and in no wise indicated an intent upon the part of Miss Thompson to retain dominion and control over the property.

[4] The fact that the trust company was to hold the securities until the death of Miss Thompson did not render the gift invalid. The fair and reasonable conclusion from the evidence is that the securities were left with the bank for the convenience of the parties, in order that the trust company might collect the interest and remit the same to Miss Thompson, rather than for the purpose of retaining any control or dominion over the property in Miss Thompson. The delivery of the subject-matter of a gift inter vivos may be to a third person with instructions to deliver it to the donee on the donor's death, provided the donor parts with all control over the property, reserves no right to recall it, and intends thereby a final disposition of the property. Pyle v. East, supra; Greene v. Tulane, supra; Grant Trust & Savings Co. v. Tucker, supra; Hagerman v. Wigent, 108 Mich. 192, 65 N. W. 756; Woolley v. Taylor, 45 Utah, 227, 144 P. 1094; Innes v. Potter, 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896; note 3 A. L. R. 902.

We therefore conclude that the evidence supports the findings and conclusions of the master that Miss Thompson intended to give the notes and mortgages to Mrs. Lodge, and that her intention to make this gift was effectually executed by Miss Thompson causing the assignments to be made out in the name of Mrs. Lodge, her heirs, successors, and assigns, and by the delivery of the instruments to the trust company as the agent of Mrs. Lodge.

It follows that the decree appealed from should be and it is affirmed.