BURNHAM et al. v. ESCHLER.

No. 7209.   Decided June 29, 1949.   (208 P. 2d 96.)

See 26 C. J., Deeds, sec. 25.  Grantee left out of deed, see note, 175 A. L. R. 1294.  See, also, 16 Am. Jur. 79.

M. *Earl Marshall,* Tooele, *Gustin & Richards,* Salt Lake City, *Brent T. Lynch, Jr.,* Salt Lake City, for appellants.

*Ray, Quinney & Nebeker,* Salt Lake City, for respondent.

WOLFE, Justice.

Action to quiet title to nine tracts of real property in Salt Lake County standing on the record in the name of Jennie B. Schank at the date of her death, March 30, 1947. The respondent, hereinafter referred to as the defendant, Leta B. Eschler, a niece of Mrs. Schank, claims title to said property by virtue of nine warranty deeds purportedly executed by the latter in her lifetime and placed on record by the defendant on April 3, 1947. The appellants, hereinafter referred to as the plaintiffs, with the exception of the Walker Bank and Trust Company, administrator of the estate of the deceased, are heirs of the estate. Maritta B. Brazier, mother of the defendant and sister of the deceased, is the only heir not joining in the action as a party plaintiff. Plaintiffs contend that Mrs. Schank died intestate as to the properties, and that they, therefore, have succeeded to an interest in them. The lower court sustained the defendant's claim of ownership and quieted title in her.

The defendant adduced testimony that Mrs. Schank came to the real estate office of C. H. Dowse and his son, S. W. Dowse, in Salt Lake City on December 20, 1938, and directed them to prepare deeds to at least nine tracts of real estate

in Salt Lake County; that the deeds were signed by her in their presence and acknowledged before C. H. Dowse, a notary public; that the deeds were complete in all details when she left the office except that they were blank as to the names of any grantees; and that Mrs. Schank stated she would complete the deeds at a future date in order that the property would go to certain party or parties and not to others, but she did not disclose at that time the parties' names. The record is silent as to the whereabouts of the deeds until March of 1946. L. R. Eschler, husband of the defendant, testified that at that time, while Mrs. Schank was visiting with him and his family in Saratoga, California, she handed to him a sealed envelope, stating that "she was giving these properties to Leta," but requested that the deeds not be given to her until after Mrs. Schank's death because she "didn't want Leta to feel any personal obligation to her while she was still living"; that Mrs. Schank discussed with him his income and inasmuch as the properties were not selfsustaining she concluded it would be a burden on him to pay the taxes and other expenses incident to the management of the properties and stated that she would pay them herself; that thereafter he became curious, opened the envelope and found the deeds complete with Leta B. Eschler named as grantee; and that after Mrs. Schank's death he delivered the deeds to his wife who placed them on record.

The plaintiffs' first contention is that the instruments by which the defendant claims title are void because at the time the deceased signed and acknowledged them they were blank as to the grantee, and that the defendant has failed to prove that the grantor re-executed and re-acknowledged them after she inserted the grantee's name. Admittedly, a paper purporting to be a deed, but which is blank as to the grantee, is no deed and is ineffective as a conveyance while the blank remains. See the cases collected in the annotation at 32 A. L. R. 737 and 175 A. L. R. 1294. Also, if the name of a grantee is inserted by a party

who never legally obtained possession of the instrument nor obtained authority from the grantor to complete the instrument no deed comes into existence. *Beatty* v. *Shelly*, 42 Utah 592, 132 P. 1160; *Utah State Building and Loan* v. *Perkins*, 53 Utah 474, 173 P. 950. But if the blank is filled by the grantor or his agent in accordance with instructions given him, the deed upon delivery becomes operative as a conveyance. While most of the cases seem to require that the blank be filled in before delivery, some jurisdictions allow the insertion after delivery. *Wright* v. *Sconyers*, 150 Okl. 3, 300 P. 672, 75 A. L. R. 1098; *Thompson* v. *First National Bank*, 180 Minn. 552, 231 N. W. 234. In fact, some cases have held that a deed delivered in blank to the grantee gives the latter implied authority to fill it out in his own name or in the name of his grantee or purchaser. *Fisher* v. *Paup*, 191 Iowa 296, 180 N. W. 167; *Hoey* v. *Elbert*, 270 Mich. 25, 258 N. W. 228, 229; *Holliday* v. *Clark,* Mo. Sup., 110 S. W. 2d 1110. However, it is not required, as argued by the plaintiffs, that the deed be re-executed or re-acknowledged when the grantee's name is filled in. In *Engelking* v. *First State Bank,* 167 Minn. 486, 209 N. W. 307, the court held when the deed is complete except for a blank left for the insertion of the name of the grantee, "the deed becomes operative as a conveyance without being re-executed or re-acknowledged, as soon as a grantee's name is inserted therein" by one having authority. *Calhoun* v. *Drass,* 319 Pa. 449, 179 A. 586; *Wright* v. *Sconyers,* 150 Okl. 3, 300 P. 672, 75 A. L. R. 1098; *Board of Education* v. *Hughes,* 118 Minn. 404, 136 N. W. 1095, 41 L. R. A., N. S. 637; and *Vought* v. *Vought,* 50 N. J. Eq. 177, 27 A. 489, are to the same effect. Therefore, if Mrs. Schank delivered the deeds to Mr. Eschler complete as to the grantee's name with the intention of absolutely dispossessing herself of them, there can be no doubt in view of the above authority that they were valid instruments, meeting the statute of frauds in every respect, and entitled to admission in evidence under Sec. 104-48-14, U. C. A. 1943, which provides that:

"Every instrument conveying or affecting real property, acknowledged, or proved and certified as provided by law, may, together with the certificate of acknowledgment or proof, be read in evidence in an action or proceeding, without further proof; * * *."

Likewise, if the purported delivery took place, the objection made by the plaintiffs to the admission of the deeds in evidence on the ground that they appear to have been altered is without merit since the defendant has accounted for that fact by producing testimony that the grantee's name was not written at the same time and probably not on the same typewriter as the rest of the writing on the deeds.

The plaintiffs further contend that the lower court erred in finding that the deceased delivered the completed deeds in her lifetime to Mr. Eschler with the intention of completing and irrevocably divesting herself of all control and dominion over them. They insist that Mrs. Schank's conduct with reference to the property subsequent to the purported delivery was testamentary in nature, and thereby precluded the lower court from findng as it did. It is pointed out that she retained possession of the properties and the abstracts of title; collected the rentals and made expenditures for repairs, taxes, and fire insurance; reported income from some of the properties on her state income tax return for 1946; and even discussed with several persons the sale of certain of the properties without disclosing to them that she was no longer the owner thereof. True, this conduct standing alone is indicative of absolute ownership and inconsistent with the unconditioned delivery which the defendant contends was made. But when considered with the testimony of Mrs. Schank's apparent and oft-expressed affection for the defendant and the defendant's children, and her desire to secure them for the future, and with the testimony corroborating the delivery, the evidence supports the lower court's finding of an irrevocable delivery of the deeds. In fact, Mrs. Schank's conduct subsequent to the delivery is totally consistent with her intention to manage and care for the properties until her death.

Mrs. Bane, a neighbor of the deceased, testified that upon Mrs. Schank's return from her visit with the defendant in March of 1946, Mrs. Schank told her she had given certain deeds to Mr. Eschler, although no mention was made of the specific properties described therein. S. W. Douse testified that sometime after he had prepared the deeds for Mrs. Schank she expressed to him that "her niece, Leta," was the person she had in mind as the recipient of the property covered by the nine deeds. Mrs. Tallman, a friend of the deceased, testified that Mrs. Schank, within a few months prior to her death, stated that a certain parcel of her property on Second Avenue in Salt Lake City (part of the property here in question) "has been taken care of," and Mrs. Bane testified, the deceased spoke of her desire that Leta would someday build an apartment house or a duplex on this same property. While on one occasion, at least, it appears she expressed a willingness to sell one of her properties for $37,500, for aught that appears she may well have intended to discuss the sale with her niece before entering into a contract of sale just as it appears she told Mrs. Towers, one of her tenants, she would do before she would agree to sell certain Murray property covered by the deeds. The fact that she continued to receive payments on a contract of sale entered into in 1944 involving one of the tracts does not militate against the lower court's finding of delivery since at the time the deeds were delivered to Mr. Eschler she informed him of the contract. Furthermore, she may have used the money thus received to meet the expenses of the properties. There is no evidence that Mrs. Schank made any attempts whatever to regain possession of the deeds or that she ever effected a sale of any of the properties after the deeds were delivered.

Giving the property to the defendant instead of allowing it to go by succession to the plaintiffs, for none of whom it appears she exhibited much concern, and one of whom she maintained a strong dislike for, was not an unnatural disposition. Many witnesses testified that Mrs. ■

Eschler, from her early childhood up until the very
day of her aunt's death, had been the recipient of countless
favors, gifts, and courtesies from the deceased and that a
bond of affection as strong as that between mother and
child existed between the two. Since the defendant's father
had died when she was a small girl, thus necessitating her
mother to absent herself from home in order to work, the
defendant spent considerable time with her aunt and uncle,
Mr. and Mrs. Schank, who had no children. The defendant
was their guest on many trips, traveling as far away as
Alaska and Europe. After the demise of Mr. Schank in
1936, Mrs. Schank remarked to several witnesses that Leta
and her children were all she had left in life and that she
wanted to secure them for the future. What we said in
*Chamberlain* v. *Larsen*, 83 Utah 420, 29 P. 2d 355, 363,
where the grantor had expressed a determination that the
grantee's future should be provided for, is here worth re-
peating:

"That the grantor, after the execution of the deed, continued to
pay the taxes on the property, carried the insurance in her name,
and expressed to various persons a desire to sell a part or all of the
property is not, when the relationship existing between the grantor
and the grantee is taken into consideration, inconsistent with an
actual delivery of the deed."

In *Wilson* v. *Wilson*, 32 Utah 169, 89 P. 443 and in *Woolley*
v. *Taylor*, 45 Utah 227, 144 P. 1094, we upheld the delivery of
a deed even though the grantor, father of the grantee, con-
tinued to live upon the property. In the latter case the
court thought the fact that the father stayed in possession,
paid the taxes and insurance, and made improvements was
not inconsistent with ownership in his daughter, the grantee,
who had no means of her own.

"That was but natural for a father to do for his daughter and
is unlike a case of a claimed grant in praesenti to a stranger where
the grantor remained in possession, improved the property and paid
the taxes."

Even subsequent deeds made by a grantor to property he
had already conveyed away to his children as a gift have

been held not to upset the gift. See *Gappmayer* v. *Wilkinson,* 53 Utah 236, 177 P. 763.

Nor was the finding of delivery by the lower court precluded by the fact that Mrs. Schank chose to deliver the deeds to a third party instructing him to deliver the deeds to the grantee after her death instead of delivering them directly herself to the grantee. That court could well have found that her purpose for doing so was as testified to by Mr. Eschler, i. e., that

"she didn't want Leta to feel any personal obligation to her in her lifetime."

In *Wilson* v. *Wilson,* supra, we quoted with approval from 2 Jones, Law of Real Property, Sec. 1234, wherein it is stated that

"if a grantor delivers a deed to a third person absolutely as his deed, without reservation and without intending to reserve any control over the instrument, though this is not to be delivered to the grantee till the death of the grantor, the deed when delivered upon the grantor's death is valid, and takes effect from the first delivery. The deed in such case passes a present interest to be enjoyed in the future. If the grantor reserves control of the instrument, and it is subject during his life to revocation, no present estate passes to the grantee, and the deed is invalid for want of delivery." *Gappmayer* v. *Wilkinson,* supra; *Woolley* v. *Taylor,* supra; *Singleton* v. *Kelly,* 61 Utah 277, 212 P. 63, are in accord.

No other intention than that of the deceased to divest herself absolutely of title when she handed the deeds to Mr. Eschler can be reasonably deduced from the evidence in the principal case.

Two instruments, reading as follows, found among Mrs. Schank's belongings in her home after her death, were admitted into evidence:

"June 17-26

"Herein is the disposal I wish of my belongings if I should meet with any casualty.

"The home and all belongings on 2nd Ave. shall belong to my mother during her life along with $10,000.00 Ten Thousand Dollars.

One Thousand $1,000.00 to Mildred and $2,000.00 to my sisters, Smona & Rittie, also brothers.

"Jennie B. Schank"

"An equal division shall be made of balance among all members of family encluding those not mentioned in this paper. Deeds to property are in safe to be completed as designated by my mother

"Jennie B. Schank"

The former was admitted to probate as an olographic will, but the latter was rejected because it bore no date. What little probative force these instruments have did not prevent the lower court from reaching the conclusion that the deeds had been delivered. At the time the will was executed, Mr. Schank was alive. The deceased's mother, Mrs. Burnham, was still living. The defendant was a girl of about eleven years of age. Much of the property here in dispute did not then belong to the deceased. No contention is made that Mrs. Schank had at that time considered leaving her property to the defendant. Evidently, it was not until after Mr. Schank's death in 1936 and the demise of Mrs. Burnham in 1944 that the deceased become fixed in her plan to give the properties to the defendant.

The plaintiffs urge that the deeds referred to in the undated memorandum were those that Mrs. Schank signed in Dowse's real estate office in 1938, and that Mr. and Mrs. Eschler, or either of them, took the incompleted instruments from the deceased's safe the night before the funeral when they were alone in her home and filled in the defendant's name as grantee. This contention is given weight, they say, by the fact that Mr. Eschler admittedly extracted a page from one of the deceased's account books containing data of financial dealings carried on between himself and Mrs. Schank. Mr. Eschler at the trial produced the purloined page and acknowledged his mistake in removing it. He testified that he had done so because the account book was lying upon the buffet where it was subject to examination by the plaintiffs. There is no dispute that when the

safe in the deceased's home was opened for the first time after her death, Mrs. Mayo, one of the plaintiffs, was present and searched the contents of the safe for a certain receipt belonging to the deceased. The fact that Mrs. Mayo did not discover the deeds in making this search is evidence against the plaintiffs' contention. The lower court in order to have found that the Eschlers took the deeds from Mrs. Schank's safe and completed them would have had to disbelieve the testimony of Mrs. Bane and Mrs. Tallman, heretofore referred to, both of whom were disinterested witnesses.

One further assignment of error must be disposed of. Was Mr. Eschler competent to testify as to his conversation with the deceased at the time of the delivery? The plaintiffs claim he is a "party directly interested in the event" of this action and, therefore, incompetent to testify under Sec. 104-49-2, subsection (3), U. C. A. 1943, providing, as it concerns us here, that a party to a civil action, and any person directly interested in the event thereof, where the adverse party sues as administrator or heir of a deceased person, cannot testify as to any statement by, or transaction with, the deceased, or matter of fact whatever, which must have been equally within the knowledge of both the witness and the deceased person, unless called to testify by said adverse party. Particularly do they object to his testimony that Mrs. Schank expressed the desire that she continue the payment of the taxes and expenses incident to the management of the property described in the deeds in order that neither the defendant nor Mr. Eschler be financially burdened. While, of course, had Mrs. Schank not assumed the payment, Mr. Eschler might well have been called upon to shoulder this responsibility, still this is not a "direct interest" as contemplated by the statute. If Mr. Eschler had a direct interest, it was an interest in the transaction testified to, and not in the event of this action. In the annotation at L. R. A. 1917A 32, cases are cited holding that the interest in the action must be pecuniary, direct, immediate, and not uncertain, contingent or remote, and

that a husband is not incompetent because he may become a beneficiary under his wife's will or succeed to her property by her intestacy. We held in *Olson* v. *Scott*, 61 Utah 42, 210 P. 987, that the plaintiff's husband was entirely competent to testify as to statements made by the plaintiff's deceased mother to the effect that certain bank deposits belonged to the plaintiff. *Mower* v. *Mower*, 64 Utah 260, 228 P. 911, and the general rule on this point as stated in 58 Am. Jur. 195, Sec. 319, are in accord with this result. See also *Clawson* v. *Wallace*, 16 Utah 300, 52 P. 9.

The judgment appealed from is affirmed. Costs to the respondents.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WADE, Justice (concurring).

I concur with the result and generally with the reasoning of the prevailing opinion. The doubtful questions presented, as I see them, are slightly different from those emphasized in the prevailing opinion and are : Did the decedent deliver the deeds to respondent? If so, did she thereby intend to immediately pass title to the property described in the deeds? Respondent is entitled to succeed only if both of those questions are resolved in the affirmative. I think there is evidence which strongly tends to establish the negative of both of these propositions but that it preponderates the other way. The prevailing opinion poses the question whether she intended an "irrevocable delivery of the deeds," whether she delivered the deeds "with the intention of absolutely dispossessing herself of them," and whether the delivery was "with the intention of completely and irrevocably divesting herself of all control and dominion over them." I see little doubt that if she delivered the deeds at all she did not intend to get them back. But I see grave doubt that she delivered the deeds to the husband at all, and equally grave

doubt that she intended to thereby immediately and irrevocably pass title.

I agree that the husband's interest in his wife's property is not such an interest as to bring him within the exclusion provision of the dead man's statute. But in evaluating his testimony as to what happened between him and the decedent, we must keep in mind

"that a wife (and sometimes a husband) * * * is often a great help to a claimant." See forward to Model Code of Evidence by Edmond M. Morgan.

The circumstances testified to surrounding the delivery of these deeds and all the details connected therewith seem to me to be very unusual and while I do not think that his testimony should be excluded, any more than I agree with the policy of the Dead Man's Statute, I do think, if we are to reach the correct result in cases of this kind we must keep in mind that he is in an indirect way vitally interested in the result of this action. He is not only interested in the possibility of inheriting from his wife, but he is also interested in his wife and the mother of his children owning property. If he fabricated his story he did so knowing that there was no person living to contradict it. Under those circumstances the temptation to not tell the truth is often beyond the capacity of some people to resist. While I believe that the preponderance of the evidence is with the facts as found by the court, still, in view of his interest in the outcome of this case and the unusual details of his story, I reach that conclusion largely in spite of his testimony and not necessarily because of it.