### CHAFFEE v. LOCOMOTIVE ENGINEERS' MUT. LIFE & ACC. INS. ASS'N et al.

### No. 791.

Circuit Court of Appeals, Tenth Circuit.

Oct. 2, 1933.

E. A. Walton, of Salt Lake City, Utah, for appellant.

W. R. Hutchinson, Jr., of Salt Lake City, Utah (W. R. Hutchinson and Howard D. Hanson, both of Salt Lake City, Utah, on the brief), for appellee Grace B. Chaffee.

Before LEWIS and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

Locomotive Engineers' Mutual Life and Accident Insurance Association, an Ohio corporation, filed its bill of interpleader against Grace B. Chaffee and Wanda R. Chaffee in the court below. It alleged that it is a fraternal and beneficial association; that prior to November 1, 1922, it issued three certificates of membership in the association to Orson A. Chaffee, each certificate providing for the payment of death benefits in the sum of $1,500.00 wherein Alice G. Chaffee, then the wife of insured, was named as beneficiary; that about November 1st, 1922, Orson requested that the beneficiary in said certificates be changed from Alice G. to Wanda R. Chaffee, the latter be-

ing the daughter of said Orson and Alice G., and in compliance with that request the association issued new certificates of date November 1st, 1922, in which it was provided that payments to become due by virtue of said certificates would be payable to said Wanda R., daughter of insured; that about March 19, 1924, the insured requested that the beneficiary named in said certificates be changed from Wanda R. Chaffee, daughter to Grace B. Chaffee, wife; that as a part of the request Orson made the statement under oath that the certificates had been lost and requested that new certificates issue, and in compliance therewith they were issued. The beneficiary named therein was: "Grace B. Chaffee, wife." It is further alleged that Orson A. Chaffee died on or about February 27, 1931, and thereby said association became indebted under said certificates of membership; that Grace B. Chaffee was the wife of Orson at the time of his death, and she claims that she is entitled to the proceeds of said certificates; that Wanda R. Chaffee is the daughter of Orson, and she claims that the change of the beneficiary from Wanda to Grace was without force and effect as against her, and that she is entitled to the proceeds of said certificates; that each of the claimants had sued the petitioner in state courts for said proceeds, and it was uncertain as to whom they should be paid. It paid the $4,500.00 into the court below on the filing of its bill, and asked that the two claimants be ordered to answer, set up their respective rights, and that those rights be adjudicated, and that it be acquitted of liability to either. U. S. Code, title 28, § 41 (26), 28 USCA § 41 (26).

Each of the claimants answered and filed a cross-bill against the other claimant. Grace B. Chaffee rests her claim on the fact that she is the last named beneficiary; that she was the wife of Orson at the time she was named beneficiary, and is his widow. She denies that Wanda R. Chaffee has any interest, right or claim to the fund.

Wanda R. Chaffee in her cross-complaint pleads a certain written contract between Orson and his first wife, Alice G., entered into in 1921, and facts and circumstances connected therewith by which, as she alleges, the change of beneficiary from her to Grace B. was noneffective as against her right to the fund, and that she is entitled thereto.

When the issue between the claimants came on for trial Grace B. Chaffee rested her claim on the proven facts that she married Orson A. Chaffee on August 6, 1923, and was his wife thereafter until his death, which occurred February 27, 1931. She introduced the three certificates of membership issued to Orson on March 19, 1924, in which she was named beneficiary. The constitution and by-laws of the association provide that a certificate holder may change the beneficiary at his pleasure without notice to or consent of a prior beneficiary.

The facts relied on by Wanda and proven in support of her claim are as follows: Orson A. Chaffee's first wife was Alice G. He married her on May 29, 1911, and on January 6, 1912, Wanda R. was born as the only child of that marriage. They resided in Salt Lake City, but in 1914 Orson and Alice separated and lived apart thereafter. In April, 1922, Alice G. obtained a decree of divorce from Orson on the ground of desertion. The decree became absolute and final six months after its date. About one year prior to the entry of the decree Orson and his then wife Alice had several conferences about the matter at the office of the attorney for Alice, which resulted in a written contract between the two wherein the amount of alimony to be paid to Alice by Orson and a monthly sum to be paid to her for the support of Wanda were stated. That contract had been lost at the time of the trial of this case, but it was presented to the state district judge at the time the decree of divorce was entered, and although the insurance here in litigation is not mentioned in the decree proper the findings of fact of record in that case summarize provisions of the contract relative thereto. The findings in that respect read thus:

"That there has been born to plaintiff and defendant, as the issue of said marriage, one child, Wanda R. Chaffee, of the age of ten (10) years, who is now residing with plaintiff in Salt Lake City, Utah.

"That the defendant is a strong able-bodied man, and is at the present time earning about $300.00 per month as a locomotive engineer and is carrying in the Association of Locomotive Engineers policies of insurance aggregating $4,500.00, which said defendant is willing to have changed so that Wanda R. Chaffee, said child, shall be made beneficiary therein, and is willing to continue to carry the policies for said child as such beneficiary and is willing that the plaintiff shall, during the minority of said child be, and act as the trustee under said policies of insurance for said minor. That plaintiff is a fit and proper person to have the custody, care and control of said Wanda R. Chaffee."

The written contract was signed May 31, 1921. At that time the certificates were in the

possession of Orson's wife, Alice. She was the named beneficiary. Two persons signed the contract as witnesses. They and the attorney who drew it testified as witnesses in this case. Wanda was present when the contract was signed. Their testimony is to the effect that the contract provided that the certificates should be changed to the name of Wanda as beneficiary; that the certificates were to be put in the hands of Mrs. Alice G. Chaffee as trustee for Wanda, and the beneficiary would not be changed again; that Orson was to carry the insurance until his death for Wanda; that Orson was to keep the premiums paid for his daughter until his death.

The summons in the divorce case contains a written statement on the back of it signed by Orson A. Chaffee. It set forth the amount of alimony that he was to pay his then wife Alice and the amount of monthly installments to be paid to her for the support of Wanda, and it contained also this: "I also request that provision be made in said decree for me to change the beneficiary of my $4500.00 policy of life insurance now made out in my wife's favor to my daughter."

Wanda testified in this case that she never heard or knew of any change of beneficiary from herself prior to her father's death, and that she never consented to any change. The certificates were changed from Alice G., the first wife, to Wanda R., the daughter, about November 1, 1922. It was in March, 1924, that Orson requested a change from Wanda to Grace B. For that purpose he made an affidavit in which he said that the certificates that had been made payable to Wanda R. Chaffee, daughter, had been lost. It seems that the certificates first issued naming his wife Alice G. as beneficiary came into the possession of Orson after the contract of May 31, 1921, was executed. That was probably for the purpose of enabling him to have the change made to Wanda as beneficiary in the certificates, but his first wife testified that she was not to hold them because of Orson's rights to receive benefits in event of his accidental injury.

■ That a named beneficiary of insurance of this character may acquire rights to the fund based on transactions with the insured, which the law will protect as superior to the claims of a later named beneficiary though as between insurer and insured there is a reservation of the right to change the beneficiary at any time, is settled by the decisions of federal and state courts. Supreme Council of Royal Arcanum v. Behrend, 247 U. S. 394, 399, 400, 38 S. Ct. 522, 62 L. Ed. 1182, 1 A. L. R. 966; Anderson v. Groesbeck, 26 Colo. 3, 10, 55 P. 1086; Hill v. Groesbeck, 29 Colo. 161, 67 P. 167; Shoudy v. Shoudy, 55 Cal. App. 344, 203 P. 433, 436; Smith v. National Ben. Soc., 123 N. Y. 85, 25 N. E. 197, 9 L. R. A. 616; Stronge v. Supreme Lodge K. P., 189 N. Y. 346, 82 N. E. 433, 12 L. R. A. (N. S.) 1206, 121 Am. St. Rep. 902, 12 Ann. Cas. 941; Supreme Lodge, etc., v. Ulanowsky, 246 Pa. 591, 92 A. 711; McGrew v. McGrew, 190 Ill. 604, 60 N. E. 861; Stockwell v. Sedina, 170 Mich. 476, 136 N. W. 476; Grimbley v. Harrold, 125 Cal. 24, 57 P. 558, 73 Am. St. Rep. 19.

In the cases cited there were valuable considerations for the insured's agreement that the beneficiary contracted with should have the insurance. In this case the child was only nine years old when the contract was entered into between her mother and father. She could not act for herself. Her mother acted for her. While the insurance was not a subject matter for disposition in the divorce decree (Fitch v. Cornell, Fed. Cas. No. 4834), it was a part of an agreement on matters within the jurisdiction of the state court. It is observed that the father was then receiving a salary as railway locomotive engineer of $300.00 per month. The contract provided that the total alimony to be paid by him to Alice G. was only $1,000.00, and that was the decree. That amount was less than his salary for four months. The interest of the mother in her child and her anxiety for her future welfare was to her, we no doubt, a reason for contracting for less and being allowed less than she would have claimed as alimony had she not obtained from the father an agreement that the child should have the insurance. We see no reason why the wife's concession as to her own claim should not be taken as a valuable consideration for Orson's agreement that Wanda should have the insurance.

■ But conceding that Orson was not contractually bound, it is our opinion that on another ground not contractual Wanda is entitled to the proceeds of the three certificates. On the facts the father made a gift inter vivos of the certificates to his daughter. Of course, in a gift inter vivos delivery must be made. It may be made to the donee or to an agent or trustee for the donee. Chancellor Kent in his Commentaries, vol. II, p. 439, says: "If the thing given be a chose in action, the law requires an assignment, or some equivalent instrument, and the transfer must be actually executed." At the time the gift was made the three certificates were in the possession of Alice G., who was then the named beneficiary.

It would have been idle ceremony to have had her deliver them to Orson and he deliver them back to Alice.

Moreover, the written contract on the subject operated as an equitable assignment of the certificates. In execution of his intention Orson had the beneficiary changed by the issuance of new certificates in favor of Wanda as beneficiary. He obtained and held the ones in favor of his first wife for a time and the ones in favor of Wanda apparently until they were lost. He had an interest in them in his own right in the event of accident and injury to himself, but as to the interest of Wanda he should be charged as trustee in possession. The character and nature of the thing given conditions the nature of the delivery to be made. The possession of the certificates by Alice G. at the time the gift was made and the testimony of the attorney—"As I recall it now, the policy would be in the hands of Mrs. Chaffee as trustee of this girl, and the beneficiary would not be changed again."—constituted delivery and completed the gift. It was then irrevocable.

On the subject as to when title to a gift inter vivos vests in the donee, see Allen-West Comm. Co. v. Grumbles (C. C. A.) 129 F. 287; Beaumont v. Beaumont (C. C. A.) 152 F. 55; Ratterman v. Lodge (C. C. A.) 13 F.(2d) 805; Edson v. Lucas (C. C. A.) 40 F.(2d) 398, 404, 405; Smith v. Commissioner (C. C. A.) 59 F.(2d) 533, 536, 538; Adams v. Hagerott (C. C. A.) 34 F.(2d) 899; Continental Life Ins. Co. v. Sailor (D. C.) 47 F.(2d) 911; Woolley v. Taylor, 45 Utah, 227, 144 P. 1094; Martin v. Martin, 170 Ill. 18, 48 N. E. 694; Williamson v. Yager, 91 Ky. 282, 15 S. W. 660, 34 Am. St. Rep. 184; Love v. Francis, 63 Mich. 181, 29 N. W. 843, 6 Am. St. Rep. 290. In Second National Bank v. Merrill & Houston Iron Works, 81 Wis. 142, 50 N. W. 503, 504, 29 Am. St. Rep. 870, the court had under consideration a gift inter vivos from father to minor child. It said:

"How could a father make a gift to a minor child of 10 years of age? It would seem idle to deliver it personally to the child, especially if it be a promissory note. The most common and approved method of perfecting the gift in such a case is by delivering it to the child's parent, guardian, or friend in trust for the child."

In Davis v. Garrett, 91 Tenn. 147, 18 S. W. 113, the opinion was delivered by Lurton, J., who was afterward a member of the Court of Appeals of the Sixth Circuit and thereafter a member of the United States Supreme Court. In that case a father in 1859 made a gift to his daughter, then seven years of age, of a slave girl nine years old. The daughter lived with her father until her marriage ten years thereafter, and the slave lived in his household until she voluntarily left after the close of the Civil War. The father executed a deed conveying the slave to his daughter and caused it to be registered. The daughter had no trustee or guardian other than her father. The personal representative of the father's estate sought to have the daughter account for the value of the slave as an advancement to her. The court held that the daughter obtained title to the slave by gift and that she was not liable.

The insurer on filing its bill of interpleader and depositing the $4,500.00 in court was no longer interested in the controversy. It admitted liability and must abide the final judgment as to which claimant is entitled to the fund. It is our opinion that it belongs to Wanda R. Chaffee.

The judgment awarding the money to Grace B. Chaffee is reversed with directions to the court below to vacate it and to proceed in accordance with the views herein expressed.

POLLOCK, District Judge (specially concurring).

With the result reached by the writer of the opinion in this case I have no dispute. It is the true and correct result. Again, I have no dispute concerning the accuracy of the ground upon which the decision is made to rest. However, that part of the opinion with which I cannot rest content is stated by the writer as follows: "But conceding that Orson was not contractually bound," etc. This concession I cannot make. It is my judgment that appellant is entitled to the proceeds of the certificates of insurance now deposited in court as a matter of absolute contractual right based upon ample consideration, and that this agreement is valid and enforceable in this suit. The concrete question raised in this case is this: Who, and by what right, is entitled in equity to the proceeds of the benefit certificates written on the life of Orson Chaffee? The decree of divorce between Orson and his wife is silent on this question. It was the thought of the trial court in this case as no mention of this insurance was made in the divorce decree the rights of all parties, even of the minor child, Wanda, appellant herein, were settled and concluded by that decree. This holding, in my judgment, was clearly erroneous, for that the disposition of the insurance was made in a separate written contract

between the father and the mother for the benefit of their minor child, Wanda, and it was entirely unnecessary that said separate contract be either mentioned or its contents recited in the divorce decree. Fitch v. Cornell, 1 Sawy. 156, Fed. Cas. No. 4834; Shankland v. Shankland, 301 Ill. 524, 134 N. E. 67; Denler v. Denler, 142 Mich. 316, 105 N. W. 770; Summers v. Summers, 218 Ala. 420, 118 So. 912, and many other cases.

The situation of the parties at the time the contract in question was made was this: The mother of appellant had instituted and was pressing against the father of appellant a suit for divorce and alimony. Out of court, as may be done, a contract was entered into, in writing, between the father and mother of appellant settling the question of alimony, the custody of their minor child, Wanda, then nine years of age, and making provision for the support of their minor child. By this decree this minor child was placed in the custody of the mother. By this agreement, the father, among other things, made his minor daughter the beneficiary in the three certificates of insurance, the proceeds of which are now impounded in court, and, further, agreed to keep the premiums on this insurance paid until his death that the insurance might not lapse. Further, while he had the right as between himself and the insurance company under his contract of insurance to change the beneficiary at his will, he agreed to have his daughter substituted as beneficiary therein and would not, in future, change the beneficiary from his daughter to any other person. Now, in this agreement, the mother, the then beneficiary, consented the daughter might be substituted in her stead. The father consented to this change for the benefit and protection of his daughter, and, further, agreed for her benefit and sure protection in future he would not take from her that further benefit and protection and would not allow it to lapse for failure to pay premiums. That this gave the daughter a vested interest in the insurance is amply attested by the many cases cited in the opinion by Judge LEWIS and need not here be recited. That the love and affection of the father for the minor daughter, and his duty to support or assist in supporting his minor child, was ample consideration to support the contract thus made cannot be successfully contradicted. Thus, in Summers v. Summers, supra, it was held, where the original beneficiary is named pursuant to an agreement, expressed or implied, that he shall be so named, upon some valid consideration moving from him, he acquires an equitable interest in the property which cannot be defeated by a substituted beneficiary having no superior equity. In Shankland v. Shankland, supra, a contract, made prior to a divorce decree for the wife's desertion, between the husband and wife for support of a minor son and for her care of the son, in which the husband reserved the right to stop the payments if the son was not kept in proper surroundings, was held to be based on ample consideration, regardless of the wife's right to recover alimony. In Denler v. Denler, supra, an agreement between the husband and wife that if the wife will not appeal from a decree of divorce between the parties, the husband will provide her with means for support of their child, is enforceable against the husband, although the decree contains no provision for the support of the child. See many cases cited in the opinion by Judge LEWIS.

That the small amount of alimony, under all the circumstances, allowed the wife was ample consideration to support the contract thus made for the benefit of the daughter, and to deprive the father of the power of exercising the right existing as between himself and the company of again changing the beneficiary from his daughter to his second wife, Grace Chaffee, and the attempt of the father to so do, was a breach of this contract. On all of these grounds it must be, the equities and right of the appellant to the proceeds of the insurance certificates now impounded in court are superior to that of the second wife, Grace Chaffee. On this ground the decree of the trial court must be reversed.