444 P.2d 163

Anthony Charles LOCK, Stephen Lock and Patricia Ann Lock, Minors, by Hazel Margaret Lock, their Guardian, and Hazel Margaret Lock, a divorced woman, Individually, Appellants,

v.

Helen L. LOCK, a widow, Individually, and as Administratrix of the Estate of Charles H. Lock, also known as C. H. Lock, Deceased, and Bankers Life Company, a corporation, Appellees.

No. I CA-CIV 585.

Court of Appeals of Arizona.

Aug. 7, 1968.

Rehearing Denied Sept. 16, 1968.

Review Denied Oct. 22, 1968.

James L. DeSouza, Phoenix, for appellants.

Kramer, Roche, Burch, Streich & Cracchiolo, by Earl E. Weeks, James K. LeValley, Phoenix, for appellee Helen L. Lock.

Fennemore, Craig, von Ammon, McClennen & Udall, by John J. O'Connor, III, Phoenix, for appellee Bankers Life Co.

STEVENS, Judge.

This case involves an appeal from a judgment of the trial court finding that the appellants had no valid claim upon the proceeds of an insurance policy insuring the life of Charles H. Lock, now deceased.

Appellant Hazel Margaret Lock was married to Charles H. Lock in 1943 at Bardsley, Lancashire, England. Sometime after their marriage they emigrated to Canada and from there to Arizona in 1954. They resided continuously in Arizona thereafter. When the parties arrived in Arizona they had no assets and all of their accumulations thereafter were acquired during their marriage and during their Arizona residence.

Charles H. and Hazel Margaret Lock were the parents of three children, the minor appellants in this action. Hazel Margaret Lock is the duly appointed guardian of these children.

Hazel Margaret Lock filed an action for divorce against Charles H. Lock in Maricopa County in May, 1961. While the action was pending, negotiations were carried on between the parties to the divorce action, acting by and through their respective attorneys. Hazel Margaret Lock was represented in the proceedings by an attorney who is now deceased. A written property settlement agreement negotiated by the attorneys was executed by Hazel Margaret Lock and Charles Henry Lock on 29 June 1961. This property settlement agreement was approved by the Superior Court and incorporated in and made a part of the decree of divorce which was entered

on 11 July 1961. The property settlement agreement provided, in part, as follows:

"3. Husband agrees to maintain in full force and effect a policy of insurance on his life having a face value equal to the face values of policies now in force, and to create an irrevocable trust into which the proceeds of the insurance would be paid for the use and benefit of the three minor children during their minority, and the remaining principal to be equally divided among the three children upon the youngest child reaching majority."

On 29 June 1961 and 11 July 1961, the dates of the property settlement agreement and divorce decree, Charles Henry Lock's life was insured by the appellee, Bankers Life Company Policy No. GL 239, a group term life insurance policy without surrender value, and on those dates the beneficiary of record was the estate of Charles H. Lock. The policy contained a provision giving Charles H. Lock the right to change the beneficiary by filing a written notice of change of beneficiary with the company at its home office. Policy No. GL 239 was issued during the marriage of Charles H. Lock and Hazel Margaret Lock and during their residence in Arizona. The premiums, up until the time of the divorce, were paid for by earnings of the husband during the marriage. On 9 April 1962, Charles H. Lock executed, and caused to be delivered to Bankers Life Company on 11 April 1962, a form of request for change of beneficiary changing the beneficiary of Policy No. GL 239 to Helen L. Lock, appellee, second wife of the insured, if living, otherwise to the estate of the insured.

At no time prior to his death did Charles Henry Lock inform Hazel Margaret Lock of the change of beneficiary and at no time prior to his death did Hazel Margaret Lock have any knowledge that the beneficiary of the policy had been changed or that she was not the named beneficiary of that policy.

On 29 June 1961 and 11 July 1961, Policy No. GL 239 was in the amount of $12,500. On 1 March 1962 the amount of that policy was increased to $17,500. The insurance provided by that policy was in full force and effect in the amount of $17,500 at the time of Charles Henry Lock's death. On 29 June 1961 and 11 July 1961, Charles Henry Lock's life was also insured by the defendant Bankers Life Company under policy No. 1948611 in the face amount of $20,000 with an additional insurance rider for $30,000 giving total coverage on that policy of $50,000. This policy was issued on 1 August 1960 with the estate of the insured named as beneficiary. The beneficiary under that policy was never changed and the policy lapsed without value on 1 May 1962. Therefore, it appears that the face value of the policies insuring the life of Charles Henry Lock in effect on the date of the property settlement agreement and the divorce and thus the amount of insurance which he agreed to maintain in full force and effect for the benefit of the appellant minors, pursuant to the property settlement agreement, was $62,500.

Following his divorce by Hazel Margaret Lock, Charles Henry Lock was married to Helen Sproule, now Helen Lock, an appellee in this action, at Las Vegas, Nevada, on 1 December 1961. Charles Henry Lock was an insurance agent engaged in selling the policies of appellee Bankers Life Company. On 1 August 1961, Charles Henry Lock took out a policy of insurance, Bankers Life Company Policy No. 1984156, in the amount of $50,000 upon his own life naming as beneficiary the executor or administrator of his estate. When he took out this policy, he told a representative of Bankers Life Company that he was taking out the policy for the purpose of complying with the divorce decree. That policy later lapsed without value.

Following the divorce between Hazel Margaret Lock and Charles Henry Lock, they had conversations during which, in response to her specific inquiry, he stated to her that he had fully complied with the provisions of the property settlement agreement. Hazel Margaret Lock never

had any of the policies insuring the life of Charles Henry Lock in her possession.

Charles Henry Lock died intestate on 3 February 1963. The appellee Helen L. Lock was duly appointed, qualified and acted as administratrix of his estate. At the time of his death, policy No. GL 239 was still in full force and effect in the amount of $17,500. On 25 February 1963, Hazel Margaret Lock's attorney wrote a letter to Bankers Life Company, which was received by Bankers Life Company on 27 February 1963. This letter notified Bankers Life of the claim of Hazel Margaret Lock and the plaintiff minors to the proceeds of all policies upon the life of Charles Henry Lock. The letter made specific reference to the property settlement agreement and the divorce decree. On 5 April 1963, her attorney wrote another letter to Bankers Life Company setting forth a claim of community ownership of the policies.

Following the death of Charles Henry Lock, Bankers Life Company made payment of proceeds of Policy No. GL 239 to Hazel Margaret Lock as follows: on or about 7 February 1963, the sum of $2,500; on or about 23 April 1963, the sum of $6,-000; on or about 23 August 1963, the sum of $1,500. At the time of the judgment the company continued to hold the sum of $7,500.

The appellants brought suit against the appellees claiming that the minor appellants had an absolute vested right in the proceeds of all insurance policies upon the life of Charles H. Lock at the time of his death. The case was tried to the court, sitting without a jury, under several theories of liability. The trial court rejected all of the theories set forth by the appellants and the appellants have appealed from the rulings of the trial judge setting forth several questions for review.

The first question presented is whether Charles H. Lock, when he agreed with Hazel Margaret Lock, by property settlement agreement later incorporated into the divorce decree, to maintain insurance on his life payable to a trust for the benefit of his children, did thereby create an absolute vested right in his children to the proceeds of all insurance upon the life of Charles H. Lock so as to preclude him from changing the beneficiary to his second wife, Helen L. Lock.

■ While a named beneficiary of a policy, which provides for a change thereof by the insured, secures only a contingent interest therein, a subsequent agreement of the insured in consideration of a settlement of property rights in contemplation of a divorce by the terms of which he contracts to make a party the sole irrevocable beneficiary of the policy, vests the party with an equitable interest therein which may not be defeated without that party's consent. Shoudy v. Shoudy, 55 Cal.App. 344, 203 P. 433 (1921); Mutual Life Insurance Company of New York v. Franck, 9 Cal.App.2d 528, 50 P.2d 480 (1935). It is upon this theory that the appellants' claim to the proceeds of the life insurance policy No. GL 239 is based. In other words, the appellants claim that when Charles H. Lock entered into the property settlement agreement with Hazel Margaret Lock, the children acquired a vested interest in all life insurance proceeds upon the life of the deceased. We approve the rule set forth in the above cited cases and our research has revealed that this rule is well established in many jurisdictions. However, the case with which we are presently concerned does not fall within the factual situations to which this rule has been applied. In all the cases which we have found to which this rule has been applied, the property settlement agreement or the divorce decree has been specific in designating a particular policy to which the agreement was meant to apply or there have been circumstances under which the courts have been able to find an intent of the insured that the agreement should apply to a particular policy.

Jacoby v. Jacoby, 69 S.D. 432, 11 N.W. 2d 135 (1943) is a case in which the rule, as set forth above, was not applied. In

1920 Dr. Jacoby entered into a written agreement, the terms of which were incorporated into a divorce decree, obligating himself to maintain insurance on his life in the sum of $5,000 for the benefit of his first wife. No specific policy was designated in the agreement as being kept in force pursuant to the agreement, nor did the agreement specify that the then existing insurance would be kept in force for the benefit of the first wife. However, there was a policy on the life of Dr. Jacoby, in the amount of $5,000, in effect at the time of the agreement, with the first wife named as the beneficiary. This policy was surrendered on 7 March 1927 and its cash surrender value was applied on a new policy for $5,000 in which the first wife was named as the sole beneficiary. On the same day, Dr. Jacoby also procured a policy which insured his life for the sum of $10,000. This policy named his second wife as his sole beneficiary with the right reserved to change the beneficiary. On 2 October 1929, Dr. Jacoby changed the beneficiary in his $10,000 policy so as to make it payable $5,000 to the first wife and $5,000 to his estate. In July 1932, he again changed his $10,000 policy and designated his third wife as the sole beneficiary. On 10 June 1933, the $5,000 policy, payable to the first wife, was surrendered and the cash value was applied on past-due premiums on the $10,000 policy. Dr. Jacoby died in 1941 without having procured any other insurance for the benefit of his first wife. Dr. Jacoby had retained possession of all of the described policies at all times. The first wife claimed equitable rights in the $10,000 policy to the extent of $5,000. The trial court sustained her claim.

The Supreme Court of South Dakota reversed the trial court and held that the first wife had no vested interest in the policy. The court stated, at 11 N.W.2d 137:

"* * * We have been unable to find a case in which a court, in dealing with a contract which without describing a particular policy provided for protection to the promisee in a stated amount, has held that such a contract of its own separate force operated to create an interest in any of the policies of insurance of the promisor. The theory of the cases cited by counsel, and of all the cases we have examined, as we interpret them, is that two factors are essential to the creation of such a vested or equitable interest, viz., (1) such an express or implied contract to provide insurance and (2) a naming of the promisee as the beneficiary in a policy. When these factors concur, the underlying contract restricts the power reserved in the particular policy to change the beneficiary, and transforms that which would otherwise amount to an expectancy into a so-called vested right. In our opinion, in the circumstances of the instant case, as well as in a case where the promisor in such a contract has policies in force at the time of its execution, and later has other policies written but fails and refuses to perform his contract by naming the promisee as the beneficiary in any policy, the promisee gains nothing but a cause of action for breach of contract and stands on no different footing in relation to the contracts of insurance of the promisor than any other of his creditors."

In Goodrich v. Massachusetts Mutual Life Ins. Co., 34 Tenn.App. 516, 240 S.W. 2d 263 (1951), there was a divorce decree ratifying, approving and adopting a property settlement agreement which provided that the husband "agrees to pay the premiums upon and to continue in force a certain policy of insurance on his life, which said policy is in the sum of Five Thousand Dollars ($5,000.00), and to keep said insurance in force in favor of the said Edwin L. Goodrich (the first wife) as beneficiary thereof". It further appeared that there were several policies on the life of the husband at the time the property settlement agreement was executed. At least one of these policies was a $5,000 policy made out with the first wife as beneficiary. There was no evidence as to the amount of the other policies nor as to whom was named as beneficiary in the other policies. The

husband changed the beneficiaries in all of the policies at the same time. The husband died and the first wife claimed the proceeds of one specific policy.

In *Goodrich* the trial court withdrew the case from the jury and denied the claim of the wife on the basis that the particular policy claimed was not identified by the property settlement agreement or by the divorce decree and that the only remedy available was a suit against the estate for the benefits under the property settlement contract. The appellate court noted that there were material facts and circumstances tending to show that the intention of the deceased was to carry out his contract by continuing in force the policy sued on and the trial court was reversed. The question of the intent of the insured to treat the policy sued on as the policy referred to in the property settlement agreement was submitted to a jury. The jury found that the insured had intended the policy sued on to be kept in force pursuant to the agreement. The case was again appealed and the appellate court held that the first wife had a vested interest in the policy which was not defeated by the act of the insured in changing the beneficiary.

█ In the case with which we are presently concerned, the property settlement agreement was specific and unambiguous in providing that the husband agreed to "maintain in full force and effect a policy of insurance on his life having a face value equal to the face values of policies now in force * * *." The property settlement agreement did not refer to any policies of life insurance that were in effect at the time that the property settlement agreement was entered into. The agreement contemplated that the insured would take out a new policy and name the three minor children as the beneficiaries. As has been pointed out above, the insured did take out such a policy for the benefit of the three minor children although the policy was not in the amount contemplated by the separation agreement. However, this insurance policy was allowed

to lapse and was not in effect at the time of the death of the insured. Under these facts we must hold that the appellants had no vested interest in any insurance policies existing upon the life of Charles Henry Lock at the time of his death. In short, Charles H. Lock breached the property settlement agreement and the remedy of the appellants was a cause of action against the estate for breach of contract rather than a cause of action based on the insurance policy. See Jacoby v. Jacoby, supra, and Waxman v. Citizens National Trust and Savings Bank, 123 Cal.App.2d 145, 266 P.2d 48 (1954).

The second question presented is whether a constructive trust should be impressed for the benefit of the appellants upon the policies of insurance upon the life of Charles H. Lock, or proceeds thereof, in the hands of anyone having, or having had possession or control thereof by reason of actual and constructive fraud of Charles H. Lock against appellants.

█ In Arizona, in reviewing the refusal of a trial judge, sitting without a jury, to find fraud, an appellate court is bound to sustain the action if the record shows that as to any of the essential elements, the trier of fact was reasonably justified in finding that the party alleging fraud failed to meet the standards of clear and convincing proof. When no findings of fact are made or requested the appellate court must presume that the trial court found the necessary facts upon which to predicate its judgment, providing there is evidence in the record to support the judgment of the trial court. Cullison v. Pride O'Texas Citrus Association, 88 Ariz. 257, 355 P.2d 898 (1960). No findings of fact or conclusions of law were requested or made in the present case and there is evidence in the record to support the judgment of the trial court that there was no actual fraud. Under these circumstances, we find no error on the part of the trial court in holding that there was no actual fraud.

█ The appellants contend that a constructive trust may be impressed upon insur-

ance proceeds in a situation such as that here existing. They state that this theory and remedy was expressly followed in Chaffee v. Locomotive Engineers Mutual Life and Accident Insurance Association, 67 F.2d 279 (1933). There is a significant difference between the *Chaffee* case and the case with which we are presently concerned. In *Chaffee*, the husband and wife had entered into an agreement before divorce whereby the husband agreed to name the child of the husband and wife as beneficiary of a then existing life insurance policy on the life of the husband. The husband further agreed to maintain the child as a beneficiary of the then existing policies. The husband remarried and asked the insurance company to change the beneficiary to the second wife, alleging that he had lost the original policies. New certificates were issued and the second wife was named as beneficiary. The court held that the child had an equitable interest in the insurance policies that could not be defeated by changing beneficiaries. The distinction between the *Chaffee* case and the case with which we are presently concerned is the fact that in the *Chaffee* case there was a specific insurance policy referred to in the property settlement agreement. In our case we are not dealing with a policy which existed at the time of the property settlement agreement in which the appellants have shown themselves to have a vested interest. We can find no basis for establishing a constructive trust because the property settlement agreement in question did not relate to the policies or the proceeds thereof that were in existence at the time of the death of the insured. Again we must state that, in our opinion, the remedy of the appellants under the property settlement agreement was an action for breach of contract and a constructive trust cannot be enforced on the proceeds of the insurance policies under the factual posture of this case.

The third question presented is whether the policies of insurance on the life of Charles Henry Lock were owned by the community composed of himself and his wife Hazel Margaret Lock, and owned by them as tenants in common after their divorce with the consequent result that he could not designate a third person as beneficiary of the policy proceeds without the knowledge and consent of Hazel Margaret Lock. The appellees contend that this issue was never properly raised in the trial court urging that the appellants did not allege in their complaint that the subject policies were owned by the first wife as community property or as a tenant in common, and urging that the issue of co-ownership of the policies was not stated as an issue in the pre-trial order. The appellants contend that the issues were properly raised in the trial court at the time of trial and in memorandums filed by the appellants. We do not find it necessary to decide whether or not the issue was properly raised in the trial court because we are of the opinion that there was no community interest in the insurance policies involved after the divorce was consummated.

There were two policies in effect on the life of Charles Henry Lock at the time of his death. It was undisputed that all premiums on one of the policies were paid by Bert M. Crockett, a former business associate of Mr. Lock. It cannot be contended that the community had any interest in this insurance policy. The other policy in effect on Mr. Lock's life at the time of his death was Bankers Life Policy No. GL 239. This policy was a group term life insurance policy without value. The policy never had a cash surrender value; the policy was in effect for approximately 19 months after the divorce decree became effective; the premiums paid which resulted in this policy being in effect on the date of Mr. Lock's death were not paid from community funds as they were paid after the divorce.

In Gaethje v. Gaethje, 7 Ariz.App. 544, 441 P.2d 579 (1968), Divison Two of this Court had before it a case in which a term policy of life insurance was involved. The parties had been married for the first time in 1947. In the same year, the life insurance policy involved was issued to the husband. The par-

ties were divorced in 1952 and the decree contained no reference to the policy. The parties were married for the second time in 1953 and remained married until the time of the husband's death. The policy of insurance remained in effect from the time of the first marriage until the time of the death. In the meantime, the husband had changed the designation of beneficiary from the wife to the husband's son. The court said: (441 P.2d at 584, 585)

"We regard the interest of the insured in this ·policy prior to his death to be community in nature, for the reason that, though this policy at one time was paid upon by the husband while divorced, it is a term policy and had no monetary value at any time until the death of the husband. * * * Upon the death of the insured, the value of a term policy purchased with community funds is measured by the proceeds of the policy, and not the premiums paid thereon. (citing case)

"We, therefore, do not regard the proceeds of this policy to be property which must take on community or separate character depending upon the time of the initiation of the insurance contract, * * *. Nor are we concerned with analyzing the legal metamorphosis that may have occurred at the time of the divorce, when no mention was made of this policy in the decree. Community funds paid for *all* of the coverage that resulted in these particular proceeds. The fact that the husband's separate estate paid a premium for a risk long since expired without loss should not give his separate estate any vested interest in these proceeds."

The principles set forth in *Gaethje* are equally applicable to the case with which we are presently concerned. In our case, separate funds paid for *all* of the coverage that resulted at the time of Mr. Lock's death. The fact that the community that had existed between Charles Henry Lock and Hazel Margaret Lock had paid a premium for a risk long since expired without loss would not give this community estate

any vested interest in the proceeds of the policy. We hold that Hazel Margaret Lock had no interest in Policy No. GL 239 at the time of the death of the insured.

The final question presented relates to the reopening of the appellees case in chief and the denial to the appellants of the right to present or offer evidence in rebuttal thereto. It appears from the record that the appellee, Helen L. Lock, moved to reopen her case and this motion was not opposed. The appellants did not at any time move to reopen their case. The appellee, Helen L. Lock, presented evidence in support of her defense and then rested. The appellants attempted to place Hazel Margaret Lock on the stand purportedly to present rebuttal evidence. Counsel for the appellees objected and the objection was sustained. An offer of proof was then made by appellants' counsel. We have reviewed the transcript and the offer of proof and find that the testimony offered was not rebuttal testimony but only an attempt to add further details to the testimony of the appellant, Hazel Margaret Lock, as to the dates of conversations she had with her husband, these conversations being referred to in her testimony at the trial. Nor do we find that anything else in the offer of proof relates to rebuttal testimony. We hold that there was no reversible error in the failure of the trial court to allow Hazel Margaret Lock to take the stand to offer additional testimony.

Judgment affirmed.

CAMERON, C. J., and J. THOMAS BROOKS, Judge of Superior Court, concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from the consideration of this matter, Judge J. THOMAS BROOKS of the Superior Court was called to sit in his stead and participate in this decision.