722 P.2d 298

**Opal N. CARPENTER,
Plaintiff-Appellee,**

v.

**Sandra CARPENTER,
Defendant-Appellant.**

**No. 1 CA–CIV 7590.**

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 14, 1985.

Patten, Montague & Arnett by W. Dea Montague, Tempe, for plaintiff-appellee.

Allen, McClennen & Fels, P.C. by Robert H. Allen, Burton E. Dezendorf, Jr., Phoenix, for defendant-appellant.

## OPINION

CORCORAN, Judge.

In this appeal by decedent John Carpenter's widow, Sandra Carpenter, we must decide whether the trial court correctly awarded to Opal Carpenter, John Carpenter's former wife, a percentage of an Arizona State Retirement System death benefit and the proceeds of a group term policy on John's life. We affirm in part and reverse in part.

The facts material to this appeal are undisputed. John and appellee Opal Carpenter were married on October 9, 1937. On September 27, 1974 their marriage was dissolved by a decree entered in the superior court. From June, 1951 until his death on May 20, 1981, John was employed by the City of Mesa. As a city employee, John participated in the Retirement System. As of the date of the decree, John's accrued benefits in the System were valued at $16,-197.11. On the date of the decree John was also the insured under a group term life insurance policy carried by the City of Mesa and issued by an insurance company. The death benefit under the policy was $20,000.00.

The decree incorporated by reference a property settlement agreement entered into between John and Opal on June 21, 1974. The agreement provided that John would pay Opal $640 per month for spousal maintenance. It further made a specific division of certain of the community assets and liabilities. Concerning the group policy on John's life, the agreement provided as follows:

The Respondent [Opal] remain as Beneficiary on a life insurance Policy carried by the City of Mesa on Petitioner's life in the amount of $20,000, and if for any reason this life insurance should be terminated, Petitioner [John] agrees to have a policy in the same amount made out with Respondent [Opal] as Beneficiary.

Contemporaneously with the entry of the decree, John designated Opal as beneficiary under the group life policy issued by the insurance company.

Neither the property settlement agreement nor the divorce decree mention John's accumulated state retirement fund benefit, and contained no provision that purported to dispose of community assets not specifically described. After his marriage to Opal was dissolved but before he married Sandra, John designated Sandra as beneficiary of his retirement fund death benefit.

Before John's death, the City of Mesa changed insurance carriers, replacing one insurance company with another insurance company, but the coverage remained the same. On February 13, 1981, John married Sandra, and on March 6, 1981 named her beneficiary on the new group life policy. John's marriage to Sandra continued until his death on May 20, 1981.

On June 4, 1981 Opal commenced this action against the Retirement System, the new insurance company, the City of Mesa, and Sandra. The complaint was later dismissed against all defendants other than Sandra. By agreement between the parties, the $20,000 proceeds of John's group life insurance were paid into a trust account subject to the joint control of Opal's and Sandra's counsel. Also by agreement of the parties, $21,921.08 of John's state retirement fund death benefit was paid to Sandra, and the balance of $26,792.43 was deposited in the trust account.

On cross-motions for summary judgment, the trial court entered judgment awarding Opal one half the value of John's state retirement account as of the date of the decree of dissolution, September 27, 1974, and the entire proceeds of the group policy on John's life. The trial court also

awarded Opal $6,000 attorney's fees under A.R.S. § 12–341.01. After the trial court denied Sandra's motion for new trial and to alter and amend judgment, Sandra commenced this appeal.

### 1. *The Retirement Fund Death Benefit*

■ Sandra first contends Opal was not entitled to any share of John's state retirement fund, because at the time his marriage to Opal was dissolved, his account in the fund was not community property. Sandra asserts that retirement and pension benefits were first classified as divisible community property in *Everson v. Everson*, 24 Ariz.App. 239, 537 P.2d 625 (1975). She reasons that because *Reed v. Reed*, 124 Ariz. 384, 604 P.2d 648 (App.1979) and *Guffey v. LaChance*, 127 Ariz. 140, 618 P.2d 634 (App.1980), held *Everson* was not to be applied retroactively, the *Everson* rule cannot be applied in this case to disturb the finality of a divorce decree that was final before *Everson* was decided. Accordingly, Sandra argues, Opal had no community interest in John's retirement fund, and the trial court erred in holding that she did.

Opal rejects Sandra's analysis, relying on *Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541 (1965) and *Warren v. Warren*, 2 Ariz. App. 206, 407 P.2d 395 (1965), for the proposition that *Everson* established nothing new in Arizona law. We cannot agree with Opal's view of the Arizona cases. Although *Yeazell* recognized in the context of a contract claim that municipal pension benefits are in the nature of deferred compensation, and *Warren* noted that a husband's stock purchase plan was community property because it was funded by deductions from his salary, *Everson* was the first Arizona decision that ordered a division of the value of a pension and profit sharing plan as part of a marital dissolution. We stated in *Everson*:

> Pension and profit sharing plans are a mode of employee compensation for services performed, *see LeClert v. LeClert*, 80 N.M. 235, 236, 453 P.2d 755, 756 (1969), so that the portion of the plan earned during coverture is property of the community. Therefore, Rosanne is

entitled to one-half of the value of these plans which was earned during the marriage. *Herring v. Blakeley*, 385 S.W.2d 843 (Tex.1965); *Miser v. Miser*, 475 S.W.2d 597 (Tex.Civ.App.1972). Since the record is unclear as to whether the vested interest of $16,699.62 was entirely earned during marriage, upon remand the trial court is ordered to determine what portion of vested interest was accumulated during marriage and award one-half of that sum to Rosanne.

24 Ariz.App. at 244, 537 P.2d at 629.

Opal also argues that *Reed* and *Guffey* do not preclude the retrospective application of *Everson* in this case. In *Reed* the trial court awarded the wife one half the military retirement benefits which the husband was receiving at the time of the divorce. Division Two of this court reversed on appeal, stating:

> Although *Everson v. Everson*, 24 Ariz. App. 239, 537 P.2d 624 (1975) held that any portion of a pension plan earned during marriage is community property, it was not until *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977) that the court squarely held nonvested military benefits attributable to community effort are community property. The final decree in this case was entered prior to *Everson* and *Van Loan*.
>
> . . . .
>
> There is a compelling policy interest favoring the finality of property settlements. *Peste v. Peste*, 1 Wash.App. 19, 459 P.2d 70 (1969). This policy interest would be greatly undermined if the court were to create the potential for reexamination of every military divorce prior to *Everson* and *Van Loan*. *See Martin v. Martin*, 20 Wash.App. 686, 581 P.2d 1085 (1978). We therefore hold that *Everson* and *Van Loan* should not be given a retrospective effect.

124 Ariz. at 385, 604 P.2d at 649 (footnotes omitted). We followed *Reed* in *Guffey v. LaChance*, holding that a divorce decree filed in 1969 which was silent concerning the division of the husband's non-vested

military retirement benefits could not be reopened.

In support of her argument that *Everson* may be applied retrospectively in this case despite *Reed* and *Guffey*, Opal argues in effect that the *Reed* court's citation to *Everson* and *Van Loan* was a shorthand way of referring to the principles of those cases only as they apply to non-vested military retirement benefits. Opal argues:

> The *Reed* case does not say that, as applied to the facts of the Carpenter dissolution, *Everson* will not be applied. Rather, the *Reed* case holds that *nonvested military benefits attributable to community effort will not be given retrospective effect inasmuch as the federal military benefits were not recognized as community property until the case of Van Loan, supra.*

(Emphasis in original). This is wrong. Like *Everson*, *Reed* dealt with retirement benefits that were fully vested.[1] The fact that the retirement benefits in *Reed* were derived from military employment was not a necessary element of the *Reed* court's reasoning. The rule that *Reed* refused to apply retrospectively was thus not that of the *Van Loan* decision alone, but rather the broader rule for which *Everson* and *Van Loan* stand together. We therefore agree with Sandra that *Reed* held both *Van Loan* and *Everson* to be non-retroactive. Accordingly, because the decree of dissolution in the instant case predated the *Everson* decision, the trial court erred in awarding to Opal a share of John's state retirement fund account.[2]

### 2. The Group Term Life Insurance Proceeds

■ Sandra also contends the trial court erred in holding that Opal was entitled to recover directly from Sandra the proceeds of John's group life insurance policy. She argues that under our decision in *Lock v. Lock*, 8 Ariz.App. 138, 444 P.2d 163 (1968), Opal had no right to reach any of the insurance proceeds at all, and was therefore limited to pursuing a contract claim against John's estate.

There is extensive authority for the proposition that where a property settlement agreement incorporated into a divorce decree requires the husband to maintain in effect a specifically identified insurance policy on his life that names his wife or children as beneficiaries, and the husband dies after changing the beneficiary on that policy in violation of the decree, the beneficiary intended by the decree may reach the proceeds of the policy in the hands of the person who was the named beneficiary at the husband's death. *Chaffee v. Locomotive Engineers' Mut. Life and Acc. Ins. Ass'n*, 67 F.2d 279 (10th Cir.1933); *Reliance Life Ins. Co. v. Jaffe*, 121 Cal.App.2d 241, 263 P.2d 82 (1953); *Mutual Life Ins. Co. v. Franck*, 9 Cal.App.2d 528, 50 P.2d 480 (1935); *Myers v. Myers*, 408 A.2d 279 (Dela.1979); *Pensyl v. Moore*, 415 So.2d 771 (Fla.App.1982); *Green v. Green*, 13 Mass.App. 340, 433 N.E.2d 92 (1982); *General American Life Ins. Co. v. Rogers*, 539 S.W.2d 693 (Mo.App.1976); *Travelers Ins. Co. v. Lewis*, 531 P.2d 484 (Utah 1975); *Crozier v. Equitable Life Assur. Soc'y*, 33 Wash.App. 828, 658 P.2d 39 (1983). The same rule has been held to apply where the policy, though not specifically identified in the decree, is in existence at the time the decree is entered and is generally described in a provision of the decree requiring the husband to maintain life insurance payable

---

1. The husband in *Reed* was actually receiving his military retirement benefits at the time of the decree of dissolution. 125 Ariz. at 384, 604 P.2d at 648. The first Arizona decision that concerned the division of non-vested retirement benefits was *Van Loan*. The *Van Loan* court described the issue before it as follows:

> The primary question we are asked to decide in this case is whether the community of Jack and Verna Van Loan had a "property" right or interest, subject to division upon divorce, in military retirement benefits, prior to the time the right to payment under the pension became certain.

116 Ariz. at 273, 569 P.2d at 215.

2. Because we hold that Opal had no community property interest in John's retirement benefits, we need not address Opal's contention that A.R.S. § 14–6114 prohibited John from defeating that interest by changing the beneficiary on the account.

to his wife or children. *Orsini v. Commercial Nat. Bank,* 6 Ark.App. 166, 639 S.W.2d 516 (1982); *Reeves v. Reeves,* 236 Ga. 209, 223 S.E.2d 112 (1976); *Matter of Lemer's Estate,* 306 N.W.2d 244 (S.D.1981); *Goodrich v. Massachusetts Mut. Life Ins. Co.,* 34 Tenn.App. 516, 240 S.W.2d 263 (1951).

It has also been frequently held that the first wife's right to reach the insurance proceeds in the hands of the named beneficiary is not defeated where, as in this case, the property settlement agreement specifies a particular group life insurance policy provided by the husband's employer and the employer changes insurance carriers before the husband's death. *Vath v. Vath,* 432 So.2d 806 (Fla.App.1983); *Dixon v. Dixon,* 184 So.2d 478 (Fla.App.1966), *aff'd,* 194 So.2d 897 (Fla.1967); *Curtis v. Curtis,* 243 Ga. 611, 255 S.E.2d 693 (1979); *Hudspeth v. Stoker,* 644 S.W.2d 92 (Tex.Civ. App.1982). As the court stated in *Hudspeth,*

> Like the court in *Dixon,* we find no legal significance in the change of carriers herein. Hudspeth made no attempt to change employers, merely going through the formalities and paperwork necessitated when [his employer] changed carriers. [The employer's] decision to change carriers had no legal relevance to Hudspeth's obligations under the divorce decree.

644 S.W.2d at 95.

Sandra nevertheless contends our decision in *Lock v. Lock,* as followed by the New Mexico Supreme Court in *Rindels v. Prudential Life Ins. Co.,* 83 N.M. 181, 489 P.2d 1179 (1971), requires us to hold that Opal was limited to a claim against John's estate. We disagree. *Lock* is interesting only because it provides a useful contrast to the present situation. In *Lock* the property settlement agreement provided that the husband was to maintain a policy of insurance on his life with a face value "equal to the face values of policies now in force" and to create a trust into which the proceeds would be paid for the benefit of his minor children. The agreement did not refer to specific policies or the amounts of any policy or policies. Although the husband had insurance on his life totaling $62,500, this court determined that "the [property settlement] agreement contemplated that the insured would take out a new policy and name the three minor children as the beneficiaries." 8 Ariz.App. at 143, 444 P.2d at 168. The husband later took out a $50,000 policy on his own life naming as beneficiary his estate and he stated that this policy was to satisfy the provisions of the agreement. This policy later lapsed. At the time of his death, the husband had $17,500 in insurance with his second wife as named beneficiary. His children claimed the proceeds of this policy. This court held that the children had no vested interest in the policy existing on the husband's life at the time of his death. The court indicated that the children would be relegated to a suit against the estate of the husband for breach of the property settlement agreement. *Id.* In this case, however, the property settlement agreement referred to a specific policy that was in existence at the time of the decree, and the only policy in effect at John's death was the group policy that was issued in substitution for the original group policy when John's employer changed insurance carriers.

*Rindels v. Prudential Life Ins. Co., supra,* is equally distinguishable. There the property settlement agreement required the husband to maintain in effect a group life insurance policy he obtained through his employment which named his minor children as beneficiaries. Unlike this case, the husband in *Rindels* left his employment, which caused the group policy specified in the agreement to terminate. After obtaining another job, the husband obtained other group life coverage and named his new wife as beneficiary. The *Rindels* court held that the children had no equitable interest in the proceeds of the second group policy, and that their sole remedy was against the husband's estate. *Rindels* distinguished *Dixon v. Dixon, supra,* on the ground that the husband in that case had not left his employment, and the second group life policy had merely been

substituted for the policy in effect at the time of the property settlement agreement because of the employer's decision to change group life underwriters. As we indicated above, it is the rationale of cases like *Dixon,* not that of *Lock* and *Rindels,* that applies here. Because of the factual distinctions, we need not revisit *Lock* or comment further on its progeny, *Rindels,* both of which have been criticized for relying "heavily on formalisms and too little on basic equitable principles." *Simmonds v. Simmonds,* 45 N.Y.2d 233, 239, 408 N.Y. S.2d 359, 365, 380 N.E.2d 189, 195 (1978).

■ Sandra further argues she was entitled at least to a one-half community interest in the proceeds of John's group insurance policy under *Gaethje v. Gaethje,* 7 Ariz.App. 544, 441 P.2d 579 (1968). *Gaethje* is inapposite. There the parties were married at the time of the husband's death, and the issue was whether the husband's naming of his son by a previous marriage as the beneficiary of a term life insurance policy, on which the premiums had been paid with community funds, constituted a fraud on the surviving wife's rights. We held that as long as the wife received at least half the total value of the community assets after her husband's death, there was no fraud on her rights. In relying on *Gaethje,* Sandra apparently forgets that in contrast to that case, the instant case is controlled by the provisions of a property settlement agreement incorporated into a decree of dissolution. Opal's claim to the insurance proceeds in this case was based not on any claim that John's action in designating Sandra as the beneficiary was a fraud on Opal's rights as John's wife, as in *Gaethje,* but rather on the ground that Opal had an equitable right to those proceeds by virtue of the agreement and decree. Moreover, John's payment of the last premiums on the term life policy with funds from the marital community of John and Sandra did not operate

to confer on Sandra a community interest in the proceeds. As Opal points out, John's obligation to maintain the term life policy under the property settlement agreement was, as to the marital community of John and Sandra, a "premarital separate debt" for which their community property was liable pursuant to A.R.S. § 25–215(B).[3] As Division Two of this court stated in *Schilling v. Embree,* 118 Ariz. 236, 239, 575 P.2d 1262, 1265 (App.1977), "we believe the manifest purpose of the statute [A.R.S. § 25–215(B)] was to prevent avoidance of existing obligations by the voluntary act of marriage." By paying the premiums with funds of the marital community of John and Sandra, John was lawfully discharging a premarital separate debt under § 25–215(B). Accordingly, Sandra thereby acquired no community interest in the policy or its proceeds. *See Potthoff v. Potthoff,* 128 Ariz. 557, 627 P.2d 708 (1981). The trial court did not err in awarding those proceeds to Opal.

### 3. *Attorneys' Fees*

■ Sandra further contends this action did not arise out of a contract and Opal was therefore not entitled to an award of attorneys' fees pursuant to A.R.S. § 12–341.01. Sandra's assertion that A.R.S. § 12–341.01 does not apply to this action is plainly wrong (at least in part). In *Ash, Inc. v. Mesa Unified School Dist.,* 138 Ariz. 190, 673 P.2d 934 (App.1983), the court stated:

[A]s used in A.R.S. § 12–341.01, the words "arising out of a contract" describe an action in which a contract was a factor causing the dispute.

. . . .

The broad scope of § 12–341.01 also was emphasized in *Nationwide Mutual Insurance Co. v. Granillo,* 117 Ariz. 389, 573 P.2d 80 (App.1977), which awarded attorney's fees to a successful defendant in a declaratory judgment action who

---

3. A.R.S. § 25–215(B) provides as follows:
   The community property is liable for the premarital separate debts or other liabilities of a spouse, incurred after September 1, 1973 but only to the extent of the value of that spouse's contribution to the community property which would have been such spouse's separate property if single.

was not a party to the contract, and in *Shirley v. Hartford Accident & Indemnity Co.*, 125 Ariz. 70, 607 P.2d 389 (App. 1979), which awarded fees to a defendant who proved the absence of a contractual relationship. 138 Ariz. at 192–93, 673 P.2d 934, 936–37 (App.1983). *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127, cert. denied, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982) (approving an award of attorneys' fees under A.R.S. § 12–341.-01(A) in an insurance bad faith case as "arising out of a contract" because the tort claim could not exist but for the breach of contract). In the instant case, Opal's claim for injunctive relief and imposition of a constructive trust could not have existed but for John's breach of the property settlement agreement relating to the group life insurance policy. We believe Opal's claim relating to the insurance arose "out of a contract" within A.R.S. § 12–341.01. The nature of the action is not altered for the purposes of this section by Sandra's status as a defendant and third-party beneficiary. *See Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 573 P.2d 80 (App. 1977). Likewise, Opal's election of an action in equity, rather than at law for damages, does not invalidate a claim under § 12–341.01. *Id.*

■ However, since the trial court awarded attorneys' fees to Opal predicated upon both the claim for the group life insurance policy and the claim for the retirement fund death benefit, we must reverse the award of fees because Opal was only the successful party relating to the insurance proceeds and Sandra is the successful party in defending the claim for the retirement fund death benefit. We reverse the award of attorneys' fees and remand this matter for a reconsideration of the award of attorneys' fees by the trial court.

We also note that the claim made by Opal regarding the state retirement fund in the complaint was that it was "community property" and by virtue of A.R.S. § 25–318(B) the parties, including Opal, should be considered as tenants in common in their interest. The complaint does not allege that the state retirement fund was claimed pursuant to "contract." It was only in Opal's response to the motion for new trial that she made the vague and tenuous assertion that "there were in existence contractual agreements regarding the community property interests with the Arizona State Retirement System." The state retirement fund was not referred to at all in the property settlement agreement. Since we reverse the judgment relating to the state retirement fund on a different ground, we need not determine whether these allegations are adequate to bring A.R.S. § 12–341.01 into operation.

The judgment is reversed to the extent it awards to Opal any interest in John's state retirement fund death benefit, and it is affirmed with regard to the disposition of insurance proceeds to Opal. The award of attorneys' fees to Opal is reversed and remanded for reconsideration.

Since neither party requests attorneys' fees on appeal pursuant to rule 21(c)(1), Arizona Rules of Civil Appellate Procedure, no attorneys' fees are awarded on appeal.

MEYERSON and CONTRERAS, JJ., concur.